**Shirley BARBER et al.**

v.

**Edward WHITE, Jr., individually and as Executive Director of the Housing Authority of the City of New Haven, et al.**

**Civ. A. No. 15235.**

United States District Court,
D. Connecticut.

Nov. 28, 1972.

---

Stuart Bear, New Haven, Conn., for plaintiffs.

Francis J. MacGregor, Asst. Atty. Gen., East Hartford, Conn., Ronald J. Fracasse, New Haven, Conn., Harold J. Pickerstein, Asst. U. S. Atty., Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT

NEWMAN, District Judge.

This is a motion for partial summary judgment in a suit by welfare recipients living in low-rent public housing who claim they are being charged rent in excess of the limit allowed by federal law. The suit is a bewildering example of the plight of the citizen confronting bureaucracy. It is also powerful evidence, if any is needed, that all the highminded social legislation Congress can enact will not achieve the results intended unless legal service agencies are given sufficient funds and freedom to represent clients like these plaintiffs by bringing actions against government agencies to make sure that the requirements of statutes are obeyed.

The plaintiffs are all residents of low income public housing owned or leased by the New Haven Housing Authority (NHHA). Defendants are NHHA, its Executive Director and the Chairman of its Board of Commissioners (hereinafter referred to as the New Haven defendants), the State Commissioner of Welfare, and the United States Secretary of Housing and Urban Development (HUD). The suit is brought pursuant to 42 U.S.C.A. § 1983, alleging, *inter alia,* that NHHA is charging the plaintiffs rent in excess of 25% of their family income. This is alleged to be a denial of equal protection, since the 25% limit is applied to all tenants of low-rent public housing other than those on wel-

fare, and a violation of 42 U.S.C.A. § 1402(1), which specifies the 25% limit.

Jurisdiction is asserted on a number of grounds. The constitutional claim is properly based on 28 U.S.C.A. § 1343(3), and the statutory claim, involving federal law, can properly be considered in the exercise of pendent jurisdiction. Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481 (D. Conn.1972). Moreover, the claims of several of the plaintiffs, considered individually, appear likely to involve more than $10,000 over a period of years, thereby satisfying the jurisdictional amount requirement of 28 U.S.C.A. § 1331. By order of Judge Clarie, the plaintiffs were previously determined to be appropriate representatives of a class consisting of all persons who receive city or state welfare assistance and who reside in low-rent housing owned or leased by the NHHA.

Plaintiffs seek from the New Haven defendants declaratory and injunctive relief to prevent the setting of their rents in excess of 25% of their family income as defined by the Secretary of HUD. They also seek declaratory and injunctive relief to prevent the New Haven defendants from negotiating or otherwise collecting upon notes signed by the named plaintiffs and other members of the class for rent payments in excess of the 25% limit. Finally, plaintiffs seek return of rent previously paid in excess of the 25% limit. NHHA has filed a cross-claim against the Secretary of HUD for funds necessary to offset loss of income resulting from application of the rent ceiling. NHHA has also cross-claimed against the state welfare commissioner to secure a redetermination of plaintiffs' rent.

The dispute arises from a combination of (1) recent changes in the United States Housing Act of 1937, 42 U.S.C.A. § 1401 et seq., (2) the institution in Connecticut of the flat grant system for welfare payments, see Johnson v. White, 353 F.Supp. 69 (D.Conn. 1972), and (3) a disagreement within the federal bureaucracy concerning federal funding of low-rent housing subsidies.

(1) The Housing Act authorizes the United States Housing Authority, an agency of HUD, to make loans and grants to local public housing agencies for the development, acquisition, and administration of "low-rent housing" projects, 42 U.S.C.A. §§ 1409, 1411, and to make annual contributions to local public housing agencies "to assist in achieving and maintaining the low-rent character of their housing projects." 42 U.S.C.A. § 1410.

As contemplated by the Act, the NHHA was created in 1938 as a Connecticut corporation by action of the New Haven Board of Aldermen, acting pursuant to authority set forth in Conn. Gen.Stats. § 8–38 et seq. The NHHA operates low-rent housing projects, which it owns or leases, and has entered into annual contracts with HUD, under which it has received substantial federal funding.

Prior to 1969 the Act provided that rents in low-rent housing projects were fixed by the local public housing agency with the approval of HUD. In 1969 Congress enacted P.L. 91–152, which in § 213(a) (the Brooke Amendment) amended § 2(1) of the Act, 42 U.S.C.A. § 1402(1), to provide that rents in low-rent housing "may not exceed one-fourth of the family's income, as defined by the Secretary." This amendment became effective March 24, 1970. Section 213(b) of P.L. 91–152 made the 25% rent ceiling inapplicable in any case where HUD determined that welfare payments would thereby be reduced. Section 212(b) of P.L. 91–152 also amended § 10(e) of the Act, 42 U.S.C.A. § 1410(e), to increase the amount of funds HUD is authorized to use for annual contributions to local public housing agencies by an additional $75,000,000 as of July 1, 1969. These increased funds were intended to be used to make up for losses resulting

from the 25% ceiling.[1] In 1970, Congress further amended § 2(1) of the Act to provide a formula for computing the family income to which the 25% rent limit applies. P.L. 91–609, § 208(a), 42 U.S.C.A. § 1402(1). The 1970 amendment also authorized additional funds for local public housing agencies as of July 1, 1970, and July 1, 1971. P.L. 91–609, § 202, 42 U.S.C.A. § 1410(e).[2] Finally, in 1971 Congress again amended § 2(1) of the Act to provide that "a public agency shall not reduce welfare assistance payments to any tenant or group of tenants in low-rent housing as a result of any reduction in rent resulting from the application of the [25%] rent limitation. . . . " P.L. 92–213, § 9, 42 U.S.C.A. § 1402(1).

(2) In Connecticut, state law provides a formula for the computation of rents to be charged public housing tenants whose sole source of income is welfare. Conn.Gen.Stats. § 8–48. For the past several years, the NHHA has submitted its computations to the State Welfare Commissioner pursuant to this statutory formula. Each year the Commissioner has either approved or modified the NHHA rent schedule and has paid to tenants on welfare the amount of their rent, as part of their welfare assistance payment. The last determination of rents occurred on June 1, 1972. However, on August 1, 1972, the Commissioner instituted a system of flat grant payments, and since that date public housing tenants on welfare have received a flat grant payment but not a specific sum for their rent.

After Congress enacted the 25% limit in 1969, the NHHA reduced rents for all tenants except those on welfare. The rent charged welfare tenants pursuant to the state formula may well have exceeded 25% of their total family income, but they did not complain at the time, presumably because the state welfare department was reimbursing them fully for their rent. Once the flat grant system went into effect, welfare tenants obviously found it of critical importance to try to limit their rent to 25% of their total income, i. e., of their flat grant payment. For example, plaintiff Barber is charged a rent of $240 per month, but receives a flat grant payment of $410.52 per month. One-fourth of her total family income would be $102.63 per month, yet the NHHA continues to charge her rent of $240 per month. Actually her rent ceiling under the Brooke Amendment should be less than $102.63 per month, because the 1970 amendment to the Act provides that, before applying the 25% limit, family income is to be reduced by 5% plus $300 for each dependent. In plaintiff Barber's case, application of this formula reduces her maximum rent to $53.75.[3] She is thus required to pay $186.25 per month more for rent than is permitted by federal law out of a monthly welfare check of $410.52.

(3) On April 20, 1971, the NHHA applied to HUD for an additional annual

---

1. U.S.Code Cong. and Adm.News (1969), pp. 1524, 1583.

2. U.S.Code Cong. and Adm.News (1970), pp. 5582, 5675–76, 5677–78.

3. The computation is as follows:

Monthly income ............................................... $410.52

| | | |
|---|---|---|
| Yearly income ............................ | $4926.24 | |
| Less 5% deduction ........................ | 246.31 | |
| | $4679.93 | |
| Less $300 per dependent (7 children) ....... | 2100.00 | |
| Yearly family income ..................... | $2579.93 | |

Monthly family income ......................................... $214.99

25% of monthly family income .................................. $ 53.75

contribution of $68,504.51 to offset the loss of income resulting from the application of the 25% rent ceiling to all non-welfare tenants from the effective date of the Brooke Amendment, March 24, 1970, until the end of that fiscal year, September 30, 1970. HUD paid this request in full. On September 1, 1971, the NHHA applied to HUD for an additional annual contribution of $182,190 to cover similar rent reductions for the full fiscal year ending September 30, 1971. HUD also paid this request in full. On August 9, 1971 HUD issued new instructions to local housing authorities changing the procedure for applying for increased annual contributions to a system known as "forward funding." HUD Circular HM 7475.7. Pursuant to the new system the NHHA submitted to HUD an application for the fiscal year ending September 30, 1972, estimating a projected loss of about $55,000 per month from the application of the 25% rent ceiling to all non-welfare tenants. Apparently, no funds were requested to apply the ceiling to welfare tenants. The NHHA alleges this application has not been approved and the requested funds have not been paid. The NHHA estimates the additional income loss if the 25% ceiling were applied to welfare tenants would be $70,000 per month.

Plaintiffs have moved for partial summary judgment against the New Haven defendants to secure (1) prospective application of the 25% rent ceiling, (2) an injunction to prevent collection on notes previously given by the plaintiffs in excess of the ceiling, and (3) an injunction to prevent eviction of any plaintiffs for not paying rent in excess of the rent ceiling. The dispute between the plaintiffs and the New Haven defendants implicates but does not require resolution of the ultimate dispute between the New Haven defendants and the state and federal defendants. The latter dispute, raised by the cross-claims of the New Haven defendants, will require an answer to the basic question of where the buck stops (or comes from) in providing low-rent public housing for welfare recipients. But the dispute between the plaintiffs and the New Haven defendants is appropriate for partial summary judgment now because there is no genuine issue of material fact concerning the claims against these defendants.

The parties have stipulated that the NHHA is a "public housing agency," 42 U.S.C.A. § 1402(11), that the plaintiffs are welfare recipients, "families of low income," 42 U.S.C.A. § 1402(2), and tenants of low-rent housing operated by the NHHA, that the New Haven defendants have fixed rents for the plaintiffs pursuant to Conn.Gen.Stats. § 8–48 at more than 25% of plaintiffs' income, and that the New Haven defendants have fixed rents of non-welfare tenants at no more than 25% of their income, in accordance with 42 U.S.C.A. § 1402(1).

On the merits of the statutory issue [4] involving plaintiffs and the New Haven defendants, there is no dispute that the federal Housing Act does require that the plaintiffs' rent be set at no more than 25% of their family income. No party to this suit has suggested otherwise. This is not surprising since the statutes explicitly require this result, and it is confirmed by the legislative history [5] and HUD's administrative interpretations.[6]

When the 25% rent limitation was first enacted in 1969, it did not necessarily apply to all welfare recipients in public housing. The ceiling was inappli-

---

4. Since plaintiffs' statutory argument is sufficient basis for their claim, it is unnecessary to reach their equal protection claim, though it, too, appears substantial. *See* Battle v. Municipal Housing Authority for City of Yonkers, 53 F.R.D. 423, 427–428 (S.D.N.Y.1971) ; Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134, 138 (S.D.N.Y.1968).

5. U.S.Code Cong. and Adm.News (1969) pp. 1524, 1541–42, 1582–83 ; U.S.Code Cong. and Adm.News (1971) pp. 2317, 2326.

6. HUD Circulars RHM 7465.1 and 7475.1 (Mar. 16, 1970) ; RHM 7475.1 (July 6, 1970) ; HM 7465.13 (Jan. 18, 1972).

# 1096

cable in any case where HUD determined that application of the rent ceiling would result in a reduction of welfare payments. P.L. 91–152, § 213(b). While this exception could have removed some welfare tenants from the protection of the 25% rent ceiling, its very existence demonstrated that welfare tenants as a class were not exempted from the 25% requirement. There is no indication in this case that HUD ever made a § 213(b) determination with respect to welfare tenants of the NHHA. In any event, the 1971 amendment eliminated even this possible exemption for some welfare tenants by prohibiting reduction of welfare payments as a result of application of the 25% rent ceiling. P.L. 92–213, § 9, 42 U.S.C.A. § 1402(1). As HUD advised local housing agencies on January 18, 1972, "The new provision has the effect of making the 25 percent limitation on rents applicable to all tenants living in low-rent public housing who are welfare recipients. . . . " HUD Circular HM 7465.13. This circular also advised that rent adjustments should be retroactive to December 22, 1971, the date the 1971 amendment was enacted.

█ The New Haven defendants point out that the rents they are currently charging plaintiffs have been set according to the provisions of state law, Conn.Gen.Stats. § 8–48. However, they do not seriously urge that the state rent figure can be applied when federal law requires the establishment of a lower rent. Plainly, the Supremacy Clause requires that federal law prevail. As Justice Cardozo said in upholding the original Social Security Act, "When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states. So the concept be not arbitrary, the locality must yield." Helvering v. Davis, 301 U.S. 619, 645, 57 S.Ct. 904, 910, 81 L.Ed. 1307 (1937). See also King v. Smith, 392 U.S. 309, 333, n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Nevertheless the New Haven defendants resist plaintiffs' claims on the ground that application of the 25% rent ceiling without federal reimbursement for the resulting deficit is a taking of property without due process of law and just compensation in violation of the Fifth Amendment. They rely on somewhat analogous cases where railroads have successfully invoked the protections of the Fifth and Fourteenth Amendments against federal and state orders requiring them to continue operating at a loss. Railroad Commission of State of Texas v. Eastern Texas R. Co., 264 U.S. 79, 44 S.Ct. 247, 68 L.Ed. 569 (1924); Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323 (1920); In re New York, New Haven and Hartford Railroad Co., 304 F.Supp. 793 (D.Conn. 1969). If the application of the 25% rent ceiling would have the effect of forcing the NHHA to operate at a loss, this defense might be substantial, at least if the loss were to continue beyond some reasonable interim period "incident to working out the solution most consistent with the public interest." New York, New Haven and Hartford Railroad Co., First Mortgage 4% Bondholders' Committee v. United States, 289 F. Supp. 418, 444 (S.D.N.Y.1968).

█ But neither the rent ceiling of § 1402(1) nor its enforcement by this Court in favor of these plaintiffs will have the effect alleged by defendants to be unconstitutional. The unappealing but blunt fact is that nothing in the Act nor any judgment of this Court enforcing the Act requires the NHHA to continue in operation. Of course there would be a serious frustration of Congressional policy and a devastating impact upon innocent families if a housing authority were forced to close for lack of funds. But if such a disastrous result should occur, the responsibility lies with the Executive and Legislative Branches of the federal government. It is up to Congress to appropriate money and to determine how it is to be spent; it is up to agencies of the Executive Branch to carry out the will of Congress. Whether this Court has any ju-

risdiction to compel payment of federal funds to the NHHA will have to await consideration of the NHHA's cross-claims against the state and federal defendants. *Cf. Housing Authority of City of Asbury Park v. Richardson*, 346 F.Supp. 1027 (D.N.J.1972). But whatever the outcome of that issue, this Court plainly has jurisdiction to require that as long as the NHHA is operating with federal funds and pursuant to federal law, the provisions of federal law will be strictly enforced.

At oral argument, the Court was advised that the payment of federal funds has been delayed because of a dispute between HUD and the Office of Management and Budget over the release of appropriated funds.[7] While these bureaucracies battle, a plaintiff like Mrs. Barber is unlawfully forced to pay out of each monthly welfare check of $410.-52 the sum of $186.25 for extra and illegal rent charges. The time to end that illegality is now.

Since the extra rent charges are unlawful, plaintiffs are entitled to an injunction to prevent the New Haven defendants from collecting on notes for such extra rent which plaintiffs were in many instances forced to sign to avoid eviction. Plaintiffs are not pressing their claim for reimbursement of extra rent already paid in connection with this motion for partial summary judgment. Therefore, issues concerning Eleventh Amendment defenses and possible remedies such as future rent credits need not now be decided.

It is also not necessary at this time to consider plaintiffs' request for an injunction to prevent eviction for non-payment of rent in excess of the 25% ceiling. While the NHHA has threatened such eviction in the past, this has oc-curred in the absence of a judicial determination that the extra rent demanded was contrary to federal law. It will be time enough to consider the substantial question that would be raised by any effort to evict plaintiffs for asserting a federally protected right if such action should be threatened after decision on this portion of the case.

Accordingly, judgment will enter declaring (a) that rent for plaintiffs and any other persons who receive city or state welfare assistance and who reside in low-rent housing owned or leased by the New Haven Housing Authority shall not exceed 25% of their family income as defined by the Secretary of Housing and Urban Development, and (b) that notes or other evidences of indebtedness previously given by plaintiffs and any other such persons in payment of any portion of rent in excess of 25% of their family income as defined by the Secretary of Housing and Urban Development are null and void; and enjoining the New Haven Housing Authority, Edward White, Jr., and Dominic Panagrossi, their agents, employees and all persons in active concert or participation with them from (a) charging plaintiffs and any other persons who receive city or state welfare assistance and who reside in low-rent housing owned or leased by the New Haven Housing Authority rent in excess of 25% of their family income as defined by the Secretary of Housing and Urban Development, and (b) taking any steps to collect or negotiate any notes or other evidences of indebtedness previously given by plaintiffs and any other such persons in payment of any portion of rent in excess of 25% of their family income as defined by the Secretary of Housing and Urban Development.

---

7. This intra-governmental dispute apparently is of nationwide proportions. *See* "Cities Lose on Aid for Housing Poor," The New York Times, Nov. 25, 1972, p. 1, col. 5.