Jackie ANDERSON et al., Plaintiffs,

v.

Earl L. BUTZ, as Secretary of the Department of Agriculture, Defendant.

Civ. No. S–75–401.

United States District Court,
E. D. California.

Aug. 29, 1975.

Robert M. Teets, Jr., Food Law Center–California Rural Legal Assistance, David B. Bryson, San Francisco, Cal., Catherine M. Bishop, Berkeley, Cal., for plaintiffs.

Dwayne Keyes, U. S. Atty., Richard W. Nichols, Chief Asst. U. S. Atty., Sacramento, Cal., for defendant.

## OPINION

FITZGERALD, District Judge.

The plaintiffs' complaint of June 12, 1975 seeks declaratory and injunctive relief against the Secretary of Agriculture, Earl L. Butz. The jurisdiction of the court is grounded upon 28 U.S.C. §§ 1337; 1361. The essence of the plaintiffs' claim is that Secretary Butz has improperly included rent subsidies paid by Housing and Urban Development in calculating income for food stamp purposes. Each of the named plaintiffs, Jackie Anderson, Margaretta Grant, Shana Wallace, and Lilly Riego, occupy housing subsidized by the Department of Housing and Urban Development. Each plaintiff is the head of a household qualified for food stamp coupons under the Federal Food Stamp Act, 7 U.S.C. § 2011 et seq.

## CLASS CERTIFICATION:

The plaintiffs contend the number of persons similarly situated to themselves is so numerous as to make joinder impossible and therefore undertake to bring the proceeding as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure. But plaintiffs would restrict the class to all low income residents of the State of California who are tenants of housing subsidized in accordance with Section 23 of the Housing Act of 1937 as amended, or Section 101 of the Housing and Urban Development Act of 1965 as amended and who are, have been, or will be required to have

included in their household "income" for the purposes of the food stamp program the housing subsidies paid to their landlords. Plaintiffs suggest other cases are pending on these same issues in other circuits and it would be inappropriate to extend the class beyond California. The government suggests, however, that the class should properly be certified beyond California and elsewhere throughout the United States since no local California issues or defendants are involved and no rational reasons exist for limiting the class to California residents.

■■■ Class action proceedings properly applied should avoid the possibility of conflicting decisions among the federal districts and plaintiffs' proposal cuts the other way. For this reason I certify that the action may be maintained by the plaintiffs as a class action under the provisions of Rule 23(b)(2). The class shall include all low income tenants of housing subsidized under the provisions of the Housing Act of 1937 as amended, or Section 101 of the Housing and Urban Development Act of 1965 as amended, who are, have been or will be required to have included in their household "income" for purposes of the food stamp program, the Housing and Urban Development subsidies paid to their landlords.

## BACKGROUND:

This action first came before the court in Sacramento on plaintiffs' motions for injunctive relief. At that time the plaintiffs and the government had filed extensive and comprehensive briefs on the legal issues involved. The case appeared to be appropriate for disposition by way of summary judgment, and I suggested this possibility to counsel. Both sides have now filed motions for summary judgment, supporting their applications with appropriate papers and additional memoranda clearly illuminating the issues.

■■■ The Federal Food Stamp Program is administered by direction of the Secretary of Agriculture. The program is intended to effectively utilize the nation's abundance of food and to promote the health and well being of the nation's population by raising the level of nutrition among low income households.[1]

On August 5, 1974, the Secretary revised Food and Nutrition Service (FNS), Food Stamp (FS) Instruction 732–1 to require that certain housing subsidies paid by the Department of Housing and Urban Development be treated as income for food stamp purposes. The instruction provides:

> Payments in money, except those for medical costs, made on behalf of the household by a person other than a member of the household. Such payments may be made by private or government sources, for instance, housing allowances from Housing and Urban Development (HUD) would be an example of a government vendor payment. To qualify as a vendor payment, there must be an identifiable payment on the household's behalf, the major benefit from which accrues to the household rather than the payer. If there is no identifiable payment or if the major benefit from such payment accrues to the payer and not the household, such benefit shall be considered income in kind and not income to the household.
>
> FNS (FS) Instruction 732–1, Section 2262.10.

Notice of proposed rule making inviting comment was not given in the Federal Register, nor was the instruction published in the Federal Register although the instruction was printed and available for public inspection and copying.

The basic principles of the Federal Food Stamp Program[2] are simple. Eligible low income households are allowed to buy over a given period of time an established value in coupons which may be exchanged for food at a retail food store. The amount of coupons which may be allocated to a household depends upon the number of persons living in the household. An eligible household purchasing food stamps does not pay

1. 7 U.S.C. § 2011.

2. 7 U.S.C. § 2016.

the face value of the coupons, instead, cost is determined by "household income." The difference between the cost to the household and the face value of the coupons is the "bonus value." Since the cost of food stamp coupons increases with income, the impact of the "instruction" requiring certain housing allowances or subsidies paid by the Housing and Urban Development Administration to be included as income has the direct result of increasing the cost of food stamp coupons to the plaintiffs.[3]

The Secretary of Housing and Urban Development administers a variety of rent subsidy programs. Three of the plaintiffs occupy housing subsidized under the leased housing program, 42 U.S.C. § 1421b. In that program Housing and Urban Development provides financial assistance to local housing authorities which rent apartments from private owners for sublease to low income families. The leased housing program provides that low income tenants shall not pay more than 25% of their adjusted income as rent. 42 U.S.C. § 1402(1). One of the plaintiffs lives in housing under the rent supplement program. 12 U.S.C. § 1701(s). Under this program, Housing and Urban Development pays the subsidy directly to private landlords so that housing for low income families becomes available at reduced cost to the family. Tenants are required to pay a rent equal to 25% of their adjusted income.

Plaintiffs claim that the instruction fails on both procedural and substantive grounds. They contend that Secretary Butz failed to give proper notice of rule making inviting comment as required by 5 U.S.C. § 553 before promulgating "Instruction No. 732–1" and failed as well to publish the instruction in the manner required by 5 U.S.C. § 552(a)(1)(D) and 44 U.S.C. § 1505. It is to these claims of procedural defect that I now turn.

**3.** For example, affidavits filed in this case show that including housing subsidies as income increased the cost of Vera Butler's and Nicole Criswell's food stamps from $12 to $21 and from $26 to $50, respectively, and rendered Eulalia Noriega ineligible for food stamp assistance. These facts are undisputed. However,

### THE NOTICE AND PUBLICATION ISSUES:

The notice and publication issues revolve around a provision of the Administrative Procedure Act, 5 U.S.C. § 553(b)(A), and two provisions of the Freedom of Information Act, 5 U.S.C. § 552(a)(1)(D) and 5 U.S.C. § 552(a)(2)(B).

5 U.S.C. § 553(b)(A) provides in relevant part:

(b) General notice of proposed rule making shall be published in the Federal Register, * * * Except when notice or hearing is required by statute, this subsection does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; . .

5 U.S.C. § 552(a)(1)(D) provides:

(a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

. . . . .

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; . .

5 U.S.C. § 552(a)(2)(B) provides:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register; . . .

When the government initially filed opposition to the plaintiffs' claim for injunc-

in opposing plaintiffs' due process and equal protection claims the government does dispute the effect that inclusion of housing subsidies as income has on plaintiffs' purchasing power. The constitutional claims are not considered herein because they involve disputed facts.

tive relief, the government stated its position thus:

Since the instruction appears to be either a 'general statement of policy' or an 'interpretative rule' it seems clear [5 U.S.C. 553(b)] does not apply. This is particularly true when reference is made to [553(a)(2)] which provides that the rule making section 'applies, according to the provisions thereof, except to the extent that there is involved—a matter relating to agency management or to a personnel or to public property, loans, grants, benefits, or contracts.' It seems clear beyond question that the instruction at issue in this case involves a matter relating to 'public benefits.'

The government's argument is unsound insofar as it is based upon the mistaken assumption that the "public benefit" exception in 5 U.S.C. § 553(a)(2) applies here. The Secretary of Agriculture on July 24, 1971 promulgated a regulation making the procedural requirements of Section 4 of the Administrative Procedure Act applicable to all of the Department's rule making relative to public property, loans, grants, benefits or contracts. 36 Fed.Reg. 13804.[4] In later submissions the government conceded that 36 Fed.Reg. 13804 withdrew the grants and benefits exception of 5 U.S.C. § 553(a)(2) from the Department of Agriculture but reiterated its contention that the instruction falls within the interpretative rule or general policy statement exception to the notice and publication requirement of § 553.

▮ In short, the government contends that the instruction is a statement of policy and interpretation of a published regulation[5] within the meaning of 5 U.S.C. § 552(a)(2)(B) which requires only that the statement be made available for public inspection and copying.[6] Since, the government's argument runs, 5 U.S.C. § 552(a)(2)(B) applies, the notice and opportunity to comment requirement of 5 U.S.C. § 553 and the publication requirement of 5 U.S.C. § 552(a)(1)(D) cannot apply. The government contends that Congress intended by U.S.C. § 552(a)(2)(B) to exclude statements of policy and interpretation like the instruction at issue here from the publication requirement.

I do not agree with either the government's analysis or argument. As I view it, a significant difference exists between interpretative rules and general statements of policy which affect only the internal operations or actions of an agency and those rules which affect the substantive rights of others outside of the agency. Requiring publication of notice of proposed rule making with invitation to comment makes little sense if only internal operations or management of the agency are involved since agency actions on these matters would have no direct effect upon the substantive rights of persons outside the agency. While in such instances public input would likely add little of value to the process of rule making, publication by way of the Federal Register of such rules once promulgated would serve the valuable purpose of informing the public how the agency operates and creating an impression of open and nonarbitrary administration. The statutes recognize this concept: While an agency is not required under 5 U.S.C. § 553(b)(A) to give notice of proposed rule making with invitation to comment on rules of agency organization procedure and practice, publication in the Federal Register of promulgated rules of agency organization

---

4. *Rodway v. U. S. Dept. of Agriculture*, 168 U.S.App.D.C. 387, 514 F.2d 809, 814 (1975).

5. The instruction purports to interpret 7 C.F.R. § 271.3(c)(1)(f) and (h) which include in the definition of income:

(f) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

(h) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household;

6. There is no dispute over the fact that the government has made the instruction "available for public inspection and copying" as required by 5 U.S.C. § 552(a)(2)(B).

and procedures is required under 5 U.S.C. § 552(a)(1)(A), (B), (C).[7] Moreover, knowledge of the internal procedures and operations of an agency may be of great value to members of the public in their individual dealings with the agency.

It matters little what label is given the Secretary's pronouncement for as was clearly state in *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 481 (2d Cir. 1972):

> . . . the label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact.

■ I conclude that the instruction of August 5, 1974 must at the least be published in the Federal Register under 5 U.S.C. § 552(a)(1)(D).[8] Moreover, I am of the opinion that since the substantive rights of persons outside the Department of Agriculture are substantially and directly affected, the instruction is not an interpretative rule or general statement of policy within the meaning of the 5 U.S.C. § 553(b)(A) exception to the notice and comment requirement. Such an interpretation does not render 5 U.S.C. § 552(a)(2)(B) meaningless since statements of policy and interpretations not of general applicability or not affecting substantive rights of others outside of the agency need not be published in the Federal Register, nor does there appear to be any reason for publication of such rules in the Register.

In sum, I believe that notice of proposed rule making inviting comment should have been published in the Federal Register under the provisions of 5 U.S.C. § 553 prior to the promulgation of the instruction. This is so for several reasons. Most importantly, the substantive rights of persons outside the agency who are receiving rent subsidies are directly affected by the instruction because it raises the cost of their allocated food stamps. The instruction changed existing practice of not including federal housing subsidies in calculating income. The Secretary's instruction is therefore not a mere matter of agency management or a clarification of existing practice.

■ This distinction has been noted in other cases. Several courts have ruled that agency action is not merely a general statement of policy but is rule making subject to § 553 notice and comment requirements if it substantially affects the rights of persons subject to agency regulations.[9] As the District of Columbia Circuit explained in *Pickus v. United States Board of Parole:*

> . . . that outer boundary of the general policy exemption derives from congressional purpose in enacting Section 4—that the interested public should have an opportunity to participate, and the agency should be fully informed, before rules having such substantial impact are promulgated.[10]

This outer boundary also applies to the interpretative rule exemption. Agency ac-

---

**7.** (a) Each agency shall make available to the public information as follows:

(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

(A) descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

(C) rules of procedure, descriptions of forms available or the places at which forms

may be obtained, and instructions as to the scope and contents of all papers, reports or examinations;

**8.** Since the instruction is of general applicability and legal effect, the publication requirement of the Federal Register Act, 44 U.S.C. § 1505, also seems to apply here. Such a holding, however, is unnecessary in view of the finding that publication is required by 5 U.S.C. § 552.

**9.** *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2d Cir. 1972); *Pickus v. U. S. Bd. of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974); *Texaco, Inc. v. Federal Power Commission*, 412 F.2d 740 (3d Cir. 1969).

**10.** 165 U.S.App.D.C. 284, 507 F.2d 1107, 1112 (1974).

tion that substantially affects the rights of those over whom the agency exercises authority is not a mere interpretative rule of the kind that Congress exempted from the statutory rule making requirements.

■ It is important and proper that before an agency undertakes to promulgate rules affecting substantive rights of others outside the agency, there should be an opportunity afforded for an exchange between those whose rights are affected and the government. As Judge MacBride well stated in *Kelly v. United States Department of the Interior,* 339 F.Supp. 1095, 1102 (E.D.Cal.1972):

> Voiding the present regulations on what at first blush appears to be a technicality is not as pointless as it may seem. We believe that the 30-day notice rule serves an important interest, the right of the people to present their views to the government agencies which increasingly permeate their lives. The interchange of ideas between the government and its citizenry provides a broader base for intelligent decision-making and promotes greater responsiveness to the needs of the people, especially in cases such as this where Congress has only roughed in its program. Indeed, a meaningful pre-publication dialogue between plaintiffs and the Secretary may have even avoided this lawsuit. In our opinion, therefore, the 30-day comment period should be closely guarded and the 'good cause' exception sparingly used.

Finally, it is noteworthy that in the past the Secretary of Agriculture has followed the § 553 notice and comment procedure in connection with changes or clarification in agency practice regarding food stamp allotments. A notice of proposed rule making relating to the provisions of the regulations governing the Food Stamp Program was published in the Federal Register (39 FR 3642). Rules were proposed that would amend the regulations promulgated under the Food Stamp Act to incorporate amendments to the Act, include revisions, reflect Supreme Court decisions, and make other necessary changes. Interested persons were given 30 days in which to submit comments, suggestions or objections. Responses to the proposed regulations were received from 879 interested parties, with 2,291 comments. These comments were carefully considered and analyzed. The proposed rules and the changes resulting from the comments submitted were published in the Federal Register July 15, 1974, pages 25996 through 26005.

It is difficult to see a distinction between the proposed rules of which notice of rule making inviting comment was published in the Federal Register and the instruction now in question. In particular, proposed Rule 271.3(c)(1)(I)(M) concerned housing income in kind. Proposed Rule 271.3(c)(3)(1) dealt with income deductions and proposed Rule 271.3(c)(1)(3)(I)(H) concerned standard utility allowances. Each proposed rule, like the instruction before this court, had a potential direct impact on the cost of food stamps to recipients. Why the instruction should have been treated any differently than these proposed rules I fail to understand.

For the foregoing reasons, I find that the Secretary of Agriculture failed to comply with the requirements of 5 U.S.C. § 553(b) and with the requirements of 5 U.S.C. § 552(a)(1)(D) and, therefore, the instruction of August 5 is void. *Hotch v. United States,* 212 F.2d 280, 14 Alaska 594 (9th Cir. 1954).

THE SUBSTANTIVE ISSUES:

Ordinarily, disposition of this case on grounds that the procedures required by law were not complied with in promulgating the instruction would render it unnecessary to consider the substantive issue in this case. However, the substantive issues have been extensively and ably briefed. Some of plaintiffs' substantive claims involve factual issues requiring a determination of income and hence are not appropriate for disposition by way of summary judgment. I note, moreover, that several of these issues were disposed of adversely to plaintiffs' present contentions in *Patrick v. Ten-*

*nessee Department of Public Welfare*, 386 F.Supp. 944 (E.D.Tenn.1974).

One issue, however, which does not involve factual issues and apparently was not raised in the *Patrick* case, concerns the Ichord Amendment. Plaintiffs claim that the instruction is void since it is contrary to the intent of Congress as reflected in the Ichord Amendment. 7 U.S.C. § 2014(b) provides in part:

The standards established by the Secretary, at a minimum, shall prescribe the amounts of household income and other financial resources, including both liquid and nonliquid assets, to be used as criteria of eligibility.

In 1973 the Ichord Amendment, Pub.L. 93–86, added to the foregoing provision the following:

*Provided*, That such standards shall take into account payments in kind received from an employer by members of a household, if such payments are in lieu of or supplemental to household income: *Provided further*, That such payments in kind shall be limited only to housing provided by such employer to such employee and shall be the actual value of such housing but in no event shall such value be considered to be in excess of the sum of $25.00 per month.

The plaintiffs claim the Ichord Amendment specifically and intentionally limited the in kind housing payments which may be considered income for food stamp purposes. In kind income was limited to (1) housing provided by the employer (2) the value of which should not be considered to exceed $25.00 per month. The intention, according to plaintiffs, is clear that only housing subsidies provided by an *employer*, as opposed to housing subsidies administered by the Department of Housing and Urban Development are to be considered income for food stamp purposes and then only to a maximum of $25.00 per month.

To support this contention, plaintiffs cite Congressman Ichord's statement that he had submitted the amendment for approval of Representative Thomas Foley (D.Wash.), the floor manager for H.R. 8860, and that

[Rep. Foley] objected to the amendment on the ground that it would get into the problem of other welfare supplements received by the applicant, but I have changed the amendment to apply only to payments in kind received from employer.

119 Cong.Rec. 24941

Plaintiffs also rely on a statement recently made by Senator McGovern concerning what in kind payments could be included within income for food stamp purposes.

The process of completing the application on the spot should be readily accomplished by most food stamp applicants. Under this process, the applicant provides information on household composition, resources, and projected income. In the income area, this means that an applicant reports actual earnings and benefit payments, *but no vendor payments made by an outside source on behalf of the household since there are not intended under the act to be considered income* —with the sole exception of in-kind housing benefits provided by an employer to an employee, which must be counted as food stamp income under Public Law 93–86 ["Ichord Amendment"]. (Emphasis added). 119 Cong.Rec. (Daily Ed., June 10, 1975) S 10249.

Plaintiffs assert the instruction violates the Ichord Amendment according to plain terms. The directive provides for the inclusion in income of housing subsidies beyond the parameters of the amendment. Plaintiffs call attention to several authorities holding that a regulation which violates or is in disharmony with the enabling legislation is invalid. *Manhattan Gen. Equip. Co. v. Comm. of Int. Rev.*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936); *Fletcher v. Housing Authority of Louisville*, 491 F.2d 793, 800–1 (6th Cir. 1974).

To confront these arguments the government first argues that Congress' silence as to the inclusion of federal housing subsidies in income for food stamp purposes should not be interpreted as disallowing their inclusion. Secondly, the government looks to

legislative history and finds language which indicates that Congress in adopting the Ichord Amendment intended to add emphasis to already existing regulations of the Department of Agriculture on this subject.[11] The regulations then in effect included 7 C.F.R. § 271.3(c)(1)(g) which included payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need in the definition of income.

■ The legislative history is vague at best. However, it appears to me on the basis of the words employed in the Ichord Amendment in conjunction with the legislative history, that the instruction is contrary to the intent of Congress. The amendment intended to limit housing subsidies included as income for food stamp purposes to those provided by an employer in lieu of salary or wages to the extent of $25.00 per month with the apparent purpose of equalizing the food stamp benefits of a person who receives his earnings entirely in the form of wages and a person who actually has the same income but receives part of it in kind rather than in cash. The federal government is not the employer of persons who occupy federally subsidized housing nor are such subsidies given in lieu of earned income.

Plaintiffs additionally assert that the instruction violates the Congressional housing legislation that created the HUD subsidies.

Congress determined in enacting the leased housing and rent supplement programs in question in this case that eligible tenants would be required to pay no more than 25% of their adjusted incomes for rent. 42 U.S.C. § 1402(1); 12 U.S.C. § 1701s(d). This maximum percentage of adjusted income to be paid for rent also is present in conventional and leased public housing (42 U.S.C. § 1402(1)), the new Section 8 leased low rent housing program (42 U.S.C. § 1437f(c)(3), and FHA subsidized § 236 housing (12 U.S.C. § 1715z–1(f). The 25% statutory limitation has been given recognition by the courts. *Barber v. White*, 351 F.Supp. 1091 (D.Conn.1972).

It may be, as the plaintiffs assert, that the application of the Secretary's instruction will result in rental payments by eligible tenants of more than 25% of their adjusted incomes. The inclusion in income for food stamp purposes of the housing subsidies received under the leased housing and rent supplement programs results in increased cost for food stamps and a correlative decrease in the bonus value of the coupons. Named plaintiffs claim their food stamp bonuses have been reduced between 19% to 45%. Plaintiffs contend that this increased cost of food stamps due to the receipt of housing subsidies in effect requires eligible tenants to pay more than the statutory maximum 25% of adjusted income for rent. Therefore, it is argued, the Secretary of Agriculture in issuing his instruction has exceeded his authority under the Food Stamp Act by altering the statutory mandates of the Housing Acts in question.[12] However, I find that this issue is inappropriate for solution by summary judgment motion since factual issues are presented.

I conclude the instruction fails on both procedural and substantive grounds. The instruction is invalid and is now declared void.

---

**11.** 1973 U.S.Code Congressional & Administrative News 1794.

**12.** An analogous argument was recently recognized by the 9th Circuit in *Hamilton et al. v. Butz*, 520 F.2d 709, 712 (9th Cir. 1975). The court held that the Department of Agriculture's practice of including funds paid to Alaska natives pursuant to the Alaska Native Claims Settlement Act as "resources" for the purpose of determining eligibility for food stamps violates the purpose of the Settlement Act. ". . . Congress did not intend that the distributions of funds to individual Alaska Natives . . . should displace the food stamp assistance to which the Natives would otherwise have been entitled."