**Thelma BECKHAM, Henrietta Timmons, Sonia Stark, and Lenora Gordon on behalf of themselves and all other persons similarly situated, Plaintiffs-Appellees,**

v.

**The NEW YORK CITY HOUSING AUTHORITY, Joseph J. Christian, as Chairperson of the New York City Housing Authority, Blanca Cedeno, and Walter S. Fried, as Members of the New York City Housing Authority, Defendants-Appellants.**

**No. 527, Docket 84–7698.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1984.
Decided Feb. 19, 1985.

---

Charles E. Williams, III, Gen. Counsel, New York City Housing Authority, New York City (A. Joaquin Yordan, New York City, of counsel), for defendants-appellants.

James C. Francis IV, New York City, The Legal Aid Society, New York for plaintiffs-appellees.

Before FEINBERG, Chief Judge, KAUFMAN, Circuit Judge, and ROSENN,* Senior Circuit Judge.

ROSENN, Circuit Judge.

These proceedings challenge a policy of the New York City Housing Authority (the Authority) of raising the rents of its public housing tenants to one of several maximum rent alternatives when they fail to certify their income and family composition in a timely manner.

The plaintiffs, tenants of the Authority whose rents were increased to more than thirty percent of their incomes pursuant to this policy, filed their complaint in the United States District Court for the Southern District of New York seeking injunctive and declaratory relief, as well as compensatory damages. They alleged that the challenged policy violated statutory, regulatory, constitutional, and contractual requirements.[1] On the basis of the Authority's answer to the complaint and to a Request for Admissions, and there being no disputed issues of material fact, the plaintiffs moved for partial summary judgment and the defendants cross-moved for summary judgment.[2] The district court granted plaintiffs' motion and the defendants appeal. Beckman v. New York City Housing Authority, 592 F.Supp. 785 (S.D.N.Y. 1984). We reverse.

I.

The Authority owns, operates, and manages 275 public housing developments in New York City, providing housing for approximately 500,000 low-income citizens. With respect to eighty-five percent of these housing developments, the Authority has contracted with the Department of Housing and Urban Development (HUD) for the receipt of operating subsidies totalling $275,000,000 in the year 1982 which, according to the defendants, are intended to make up the difference between the Authority's annual operating expenses and the annual rents collected from its tenants. These subsidies are conditioned on annual verification by the Authority of the income and family composition of each public housing tenant and the Authority's compliance with the federal Housing Act and the regu-

---

* Honorable Max Rosenn, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. The plaintiffs asserted subject matter jurisdiction in the district court over all federal claims pursuant to 28 U.S.C. § 1331 (1982) and over claims based on the fourteenth amendment to the United States Constitution pursuant to 28 U.S.C. § 1343(3) (1982). They asserted jurisdiction over the federal statutory claims under 28 U.S.C. § 1337 (1982), as an action arising under an Act of Congress regulating commerce.

2. By stipulation and order dated December 22, 1983, the district court certified the proceedings as a class action pursuant to Rule 23(a)(1) and (b)(2), Fed.R.Civ.P. The class is comprised of all public housing tenants who have been, are now, or will be charged rents by the Authority that are: (1) the maximum rent based on apartment size, (2) 30% of the maximum admission income limit for tenants in federally-subsidized projects, or (3) the HUD-approved market rent based on apartment size, because they allegedly failed to recertify income and/or family compensation in a timely manner.

lations governing the federally-funded public housing program. The annual verification is required in order to assure that federal funds are received for persons in the economic categories intended by the Housing Act and to enable the Authority to make the annual certification to HUD.

The Brooke Amendment to the United States Housing Act of 1937 originally set limits on rental charges that a public housing agency may impose on tenants. As originally enacted in 1969, the amendment provided that rental charges set by the local public housing agency "may not exceed one-fourth of the family's income as defined by HUD." Pub.L. No. 91–152, 83 Stat. 379, 389 (1969).

In a general revision effected by the Housing and Community Development Act of 1974, Pub.L. No. 93–383, 88 Stat. 633, 654 (1974), this statutory scheme was superseded by provisions now codified at 42 U.S.C. § 1437a. After several amendments, the rental limitations in force on January 1, 1980, provided:

> The rental for any dwelling unit shall not exceed that portion of the resident's family income which the Secretary [of HUD] establishes on the basis of the relative level of income of the family, but such rental shall not exceed 25 per centum of family income in the case of a very low income family or, in the case of other families, 30 per centum of such income.

Pub.L. No. 96–153, 93 Stat. 1101, 1106 (1979).

In June 1980, the Authority established a basic maximum or "economic" rent schedule to be applied in instances where tenants failed to make timely required recertifications of their income and family composition. These rents, which would allow the Authority to break even without the benefit of federal subsidies, were intended to enable the Authority to meet its budgetary demands when federal subsidies were withheld because of the failure to verify and recertify tenant income and family composition. The Authority based its "economic" schedule on apartment size, and rents ranged from $218 to $350 per month. As a consequence, for tenants who failed to certify, the Authority fixed their rents at the "economic rent" corresponding to their apartment size until such time as the delinquent household verified its income, "or otherwise came forward with extenuating circumstances beyond its control which justified the late submission of the necessary information." Affidavit of Raymond Hensen, Authority Director of Personnel and Policy Development, paragraph 7, in support of Defendant's Cross-Motion for Summary Judgment. This rent schedule remained in effect until May 1983 when it was modified as a result of congressional legislation passed in 1981, the Omnibus Budget Reconciliation Act (OBRA) Pub.L. No. 97–35, 95 Stat. 357 (1981) (codified at 42 U.S.C. § 1437).

OBRA eliminated the discretion of public housing agencies in fixing rents and required that rents be set at: (1) 30% of the family's adjusted income, (2) 10% of the family's monthly income without adjustments, or (3) for public assistance recipients, the amount of money received as a shelter allowance. This legislation also required at least annual certification of tenants' incomes and family composition. HUD issued regulations in July 1982 to implement OBRA's requirements, 24 C.F.R. § 960.404(a) (1984), and the Authority, in turn, implemented these regulations in May 1983. The Authority also implemented a policy that all tenant households which failed timely to recertify their eligibility would be charged the amount of rent charged to families who earned the maximum eligible income. Tenants who do not pay this amount or who do not come forward with the required income certification may be subject to summary eviction.

## II.

The Authority's threshold argument is that the district court lacked jurisdiction over plaintiffs' claims under 42 U.S.C. § 1983 because according to cases it cites,

no private right of action exists against the local authority under 42 U.S.C. § 1437a. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Howard v. Pierce,* 738 F.2d 722, 730 (6th Cir.1984). Defendant also argues that section 1437a confers enforceable rights exclusively against HUD, and that therefore no action under section 1983 may be brought against the Authority.

According to the teaching of *Pennhurst,* the first question to be asked is: "Did Congress intend [in § 1437a] to create enforceable rights and obligations in favor of private parties?" 451 U.S. at 15, 101 S.Ct. at 1539. Trial courts in this circuit have recognized that section 1402(1), the predecessor statute of section 1437a, established an enforceable right of public housing tenants to pay as rent no more than the percentage of their incomes prescribed by federal law. *See, e.g., Owens v. Housing Authority of the City of Stamford,* 394 F.Supp. 1267, 1273 (D.Conn.1975); *Barber v. White,* 351 F.Supp. 1091, 1097 (D.Conn. 1972). Both *Owens* and *Barber* held that section 1402(1) established enforceable rights against local housing authorities and housing authority officials who set rents at higher than twenty-five percent of the tenant's income.

The rent limits set forth in the Brooke Amendment thus stand in sharp contrast to the funding statute interpreted in *Pennhurst.* There, the Court described the pertinent section as doing no more "than express[ing] a Congressional preference for certain kinds of treatment" and as a declaration of policy serving only as a "nudge in the preferred direction." 451 U.S. at 19, 101 S.Ct. at 1541 (quoting *Rosado v. Wyman,* 397 U.S. 397, 413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970)).

■ The second exception to enforcement of federal statutory rights through section 1983 arises "[w]hen the remedial devices in a particular Act are sufficiently comprehensive, [so] they may suffice to demonstrate congressional intent to preclude the remedy of suits under section 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. at 20, 101 S.Ct. at 1541. In that case, the Court found that the "elaborate enforcement provisions" contained in the Federal Water Pollution Control Amendments (FWPCA), 33 U.S.C. § 1251 *et seq.,* fell under this exception and, therefore, concluded "that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under section 1983." *Id.* at 14, 21, 101 S.Ct. at 1538, 1542. The FWPCA provided that suits could be brought in the courts of appeals by "any interested person" seeking judicial review of various actions by the Administrator of the Environmental Protection Agency. The FWPCA also contained express citizen-suit provisions authorizing private persons to seek injunctions to enforce these statutes. *Id.* at 13–14, 101 S.Ct. at 1537–1538.

■ The Brooke Amendment, by contrast, contains no comprehensive enforcement mechanism to enforce statutory rent limitations. *See McGhee v. Housing Authority of Lanett,* 543 F.Supp. 607, 609 (M.D.Ala.1982). Because the Brooke Amendment falls under neither the *Pennhurst* nor the *Middlesex County* exceptions to section 1983, we agree with the district court that it properly exercised jurisdiction in this case under section 1983.

### III.

The district court held that the Authority's attempts to collect rents in excess of the limits imposed by section 1437a are proscribed both by its express terms and by HUD's implementing regulations, 24 C.F.R. § 960.403 (1984), and that the maxi-

mum rent limitations of this section are absolute.[3] Our standard of review as to this conclusion of law is plenary. On appeal, defendants present a two-pronged defense. First, they contend that in order to enforce the income certification requirements of sections 1437a and 1437d(c)(2), the Authority has the power to increase the rents of those tenants who fail to recertify their incomes.[4] They rely on 42 U.S.C. § 1437, which provides, *inter alia,* that it is the policy of the United States "to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs." *See, e.g., Vandermark v. Housing Authority of the City of York,* 663 F.2d 436, 439 (3d Cir.1981). The legislative history of OBRA demonstrates that Congress was very much concerned with greater efficiency and with minimizing outlays for housing programs by requiring tenants to pay a higher proportion of their income for rent and making "numerous changes to increase the efficiency of the subsidized housing programs." Senate Committee on Banking, Housing and Urban Affairs, Omnibus Budget Reconciliation Act of 1981, S.Rep. No. 139, 97th Cong., 1st Sess. 229, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 525. The Budget Committee also noted its concerns for a new system of funding public housing operating subsidies "that will create incentives for good management, full rent collections and improved maintenance of public housing projects." *Id.* at 531.

The situation in the instant case involves tenants for whom the appropriate rent is impossible to calculate because they have failed to timely recertify their incomes. Defendants argue that in a situation where the Authority is unable to determine the appropriate rent to be charged, the Authority has the power under the general mandate of section 1437 to determine the tenant's rent. According to the Authority, this policy serves to deter tenants from failing to recertify their income, and at the same time allows the Authority to recoup from the delinquent tenants the amount of the federal money it would lose through its inability to recertify to the Secretary the income of its tenants. *See* Affidavit of Raymond Hensen in support of Defendant's Cross-Motion for Summary Judgment. This is consistent with the Housing Act's requirements that local public housing authorities develop sound and efficient management programs and practices to assure the prompt payment and collection of rents, 42 U.S.C. § 1437d(c)(4)(B).

Second, the defendants point to those provisions of the Act, *see supra* note 4, which require local public housing authorities to review the income of families living in their projects no less frequently than annually and HUD's implementing regula-

---

**3.** 42 U.S.C. § 1437a(a) states
  Dwelling units assisted under this chapter shall be rented only to families who are lower income families at the time of their initial occupancy of such units. Reviews of family income shall be made at least annually. A family shall pay as rent for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(*o*) of this title) the highest of the following amounts, rounded to the nearest dollar:
  (1) 30 per centum of the family's adjusted income;
  (2) 10 per centum of the family's monthly income; or
  (3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

24 C.F.R. § 960.403(a) provides, in pertinent part, "contract rent does not include charges for utility consumption in excess of the public housing agency's schedule of allowances for utility consumption, or *other miscellaneous charges.*" (Emphasis added.) *See also* 24 C.F.R. § 966.-4(b)(2) (1984) (distinguishing repair and maintenance charges from rent).

**4.** Section 1437d(c)(2) provides: "Every contract for annual contribution shall provide that the public housing agency shall determine, and so certify to the Secretary, that each family in the project was admitted in accordance with duly adopted regulations and approved income limits; and the public housing agency shall review the incomes of families living in the project no less frequently than annually." Section 1437a(a) provides in part: "Reviews of family income shall be made at least annually."

tions that have conditioned the payment of federal subsidy funds on substantial compliance with the annual reexamination requirement, 24 C.F.R. § 990.115 (1984). Thus, for the Authority to comply with the Act and HUD's requirements, each tenant household must cooperate with the Authority and promptly provide, as required, the necessary information regarding the amount and source of family income. In furtherance of the congressional objective that federal housing subsidies are to be furnished only to those tenants eligible for them, the Authority contractually requires of its tenant households that they reverify their income and family composition, and in a timely manner. The plaintiffs were delinquent in meeting these requirements.

As we have already noted, timely annual recertification is required by two different provisions of the statute, 42 U.S.C. § 1437a and § 1437d(c)(2); it is absolutely necessary for the efficient management of the housing program and to carry out congressional objectives as stated in OBRA's legislative history. The Authority's policy is a reasonable means of complying with congressional intent that "limited housing assistance funds" continue to be focused "on those who need the taxpayer's help the most." Senate Committee on Banking, Housing and Urban Affairs, Omnibus Budget Reconciliation Act of 1981, S.Rep. No. 139, 97th Cong., 1st Sess. 229 *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 525.[5] The OBRA provisions which, for the first time mandate annual recertification of

tenant income,[6] underscore the emphasis placed by Congress on ensuring that public housing be reserved for those who genuinely need it.[7]

The district court relied primarily on the provisions of 42 U.S.C. § 1437a which provide specifically that a family shall pay as rent the highest of the amounts specified therein. *See supra* note 3. These provisions, however, are directed to tenant households which comply with the Act's requirements of annual recertification. They obviously cannot operate for tenant households that carelessly or deliberately ignore the annual recertification required by their leases, the statute, and the implementing regulations.[8] It is impossible for the Authority to calculate thirty percent of an unknown quantity. The statute does not provide a method of calculating the rent to be paid by tenants who fail timely to recertify their income because Congress apparently never contemplated that the tenant beneficiaries of federal largesse would not comply with the essential and reasonable requirement of annual recertification.

■ Under such circumstances, the Authority, under the general rubric of its section 1437 powers, is empowered to provide such a method. 24 C.F.R. § 960.403 is inapplicable to this situation for the same reason. The Authority in the instant case is not *adding* a miscellaneous charge to the tenant's rent in violation of this regulation. The Authority has instead devised a rea-

5. The second goal of OBRA was to "reduce the rapid growth of costs in subsidized housing." *Id.* at 524. By strictly enforcing the requirement that tenants recertify their incomes annually, the Authority ensures that tenants pay the appropriate rent as their incomes increase.

6. Before 1981, tenants had been required to recertify their income "annually, biennially, or never, depending on the program or the head of the household." S.Rep. No. 139, 97th Cong., 1st Sess. 252, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 548.

7. The Committee noted that in 1981 more than 30 million families nationwide were eligible for

housing subsidies, while only 3.3 million families actually received assistance. *Id.* at 525.

8. Authority Research Director Hensen by affidavit averred and Authority counsel at oral argument represented that the Authority does not impose the maximum rent if it is made aware that there are "extenuating circumstances beyond the tenants' reasonable control." Appellees dispute this representation, but the issue before us is the permissibility of the policy, not its method of enforcement. We do not condone arbitrariness on the part of the Housing Authority, but we do not have sufficient evidence before us to determine whether that has occurred. This issue may of course be pursued before the district court upon remand.

sonable and practical method of calculating rent to be used in a situation not covered by the statute or by the regulations: i.e., where the tenant's income cannot be determined on the basis of any current information.[9]

The plaintiffs argue that the Authority can enforce the annual income recertification provisions contained in tenant leases by imposing on tenants late in returning the recertification form a revised rental retroactively based on the new income information.[10] Suppose, however, the delinquent tenants never return the income recertification form or defer their returns for many months and render the Authority impotent in complying with its budgetary requirements and its required certifications to HUD. Furthermore, the Authority under such circumstances cannot assure itself that it can ever collect any additional rents that may have become due as a result of the late recertification and which may have now accumulated. Second, argue the plaintiffs, "as with other breaches of its rules, the Authority could impose a fine, collectible separately from rent, for the failure to recertify income on time." Assuming *arguendo* that the Authority could impose such a fine, this would not necessarily enable the Authority to comply with its annual recertification commitment to HUD in order to assure annual federal subsidies. Moreover, if the establishment of a basic rent is permissible, we are not disposed to question the Authority's judgment as to whether a fine would be equally effective in compelling the tenant's recertification.

Finally, the plaintiffs argue that the Authority can ultimately terminate the lease of a tenant who breaches the obligation to recertify. This is true, but this ultimate remedy neither satisfies the social objective of the public housing program nor the housing needs of the tenants. We believe a flexible procedure to temporarily increase rent, an increase remediable merely by tenant certification, is a much less draconian measure than lease termination or eviction. The procedure adopted by the Authority when a tenant household fails to recertify affords a practical, common-sense solution to the problem, absent congressional direction, and is consistent with the relevant policy considerations implicated in the OBRA legislation, the continuing need to make low cost subsidized housing available for only those eligible for it, and the assurance of rentals equal to thirty percent of household income.

We therefore hold that where tenant households fail to make timely annual recertification of their income and family composition, section 1437a of OBRA and its implementing regulations do not prohibit local housing authorities from establishing a basic "economic" rent schedule in excess of the rental limitations contained in that section.

## IV.

We conclude that the district court correctly assumed jurisdiction under section 1983, but erred in granting plaintiff's motion for partial summary judgment. Accordingly, the partial summary judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion.[11]

---

**9.** There seems to be a conflict as to whether maximum rents are ever collected or are collected retroactively. Plaintiffs allege that they are collected retroactively, but counsel for the Authority seemed to imply the contrary at oral argument.

**10.** In response to a question of the court at oral argument, counsel for the Authority stated that the procedure is to give the noncertifying ten-

ants two notices and "typically, a tenant has three months...."

**11.** The district court did not decide plaintiffs' other claims because of its determination that the policy at issue violates the tenant rental limits established in section § 1437a. We assume that these claims will be considered upon remand and we therefore do not reach them.