Brenda E. WRIGHT; Geraldine H. Broughman; Sylvia P. Carter; individually and on behalf of all persons similarly situated, Appellants,

v.

CITY OF ROANOKE REDEVELOPMENT AND HOUSING AUTHORITY, Appellee.

No. 85–1068.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1985.

Decided Aug. 26, 1985.

Henry L. Woodward, Roanoke, Va. (Renae Reed Patrick, Legal Aid Society of Roanoke Valley, Roanoke, Va., on brief), for appellants.

Bayard E. Harris, Roanoke, Va. (Woods, Rogers & Hazelgrove, Roanoke, Va., on brief), for appellee.

Before WIDENER and MURNAGHAN, Circuit Judges, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

MURNAGHAN, Circuit Judge.

Tenants of public low-cost housing brought an action against their landlord, the Roanoke Redevelopment and Housing Authority ("RRHA"). Their complaint was based on the alleged deprivation of the tenants' rights under the Brooke Amendment of the United States Housing Act of 1937, 42 U.S.C. § 1437a,[1] and particular United States Housing and Urban Development ("HUD") regulations pertaining to utility allowances issued pursuant to that statute. Specifically, the tenant class alleged that the RRHA disregarded HUD regulations governing the establishment of "reasonable" electric utility allowances and the periodic revision of unreasonably low allowances. Thus, the tenants claimed that they were wrongfully overcharged for electrical consumption in excess of their designated allotments.[2]

■ First, we must consider the correctness of the route which the plaintiffs sought to follow in their quest for injunctive and monetary relief,[3] namely, 42 U.S.C. § 1983.[4] It is now widely recog-

---

1. **§ 1437a.  Rental payments**
   **(a) Families included; amount**
   Dwelling units assisted under this chapter shall be rented only to families who are lower income families at the time of their initial occupancy of such units.  Reviews of family income shall be made at least annually.  A family shall pay as rent for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(o) of this title) the highest of the following amounts, rounded to the nearest dollar:
   > (1) 30 per centum of the family's monthly adjusted income;
   > (2) 10 per centum of the family's monthly income; or
   > (3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

2. The appellants brought a second claim grounded on an alleged violation of a provision in the standard lease issued by RRHA.  According to the tenants, RRHA's failure to furnish electrical utilities service reasonably necessary for lighting and general household appliances at no charge violated its obligation to tenants under Paragraph 4 of their standard lease.  Paragraph 4 of the standard lease provides:
   > **Utilities:** Management Agent agrees to furnish at no charge to the Resident the following utilities as *reasonably necessary:* hot and cold water, gas for cooking, and *electricity for*

   *lighting and general household appliances* and heat at appropriate times of the year, and also range and refrigerator.  Resident will be required to pay for all excess consumption of utilities above the monthly allocated amount as developed by the Authority and determined by the individual check meter servicing the leased unit.  The schedule of allocations and charges for excess consumption is posted on the bulletin board of each Housing Development office.
   (Emphasis added).

3. The appellants initially sought injunctive relief requiring the RRHA to comply with the Brooke Amendment and federal regulations and a refund for all surcharges collected in violation of said law and regulations.
   On appeal, however, the appellants stated that newly issued HUD regulations, 24 C.F.R. § 965.470–480 (1985) mooted their claim for injunctive relief and that only their claim for damages remained viable.

4. **§ 1983.  Civil action for deprivation of rights**
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

nized that 42 U.S.C. § 1983 may be invoked to redress certain violations of federal statutory law by state actors. *Maine v. Thiboutot* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Not all violations of federal law, however, give rise to § 1983 actions. In order to determine whether a violation of a particular federal statute constitutes a basis for § 1983 liability, a court must make two inquiries: 1) whether Congress had foreclosed private enforcement of the pertinent statute in the enactment itself, *and* 2) whether the statute at issue was the kind that created enforceable "rights" under § 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).[5]

We have recently ruled that violations of the Housing Act of 1937 do not give rise to a § 1983 cause of action. *See Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210, 1217–18 (4th Cir.1981); *Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 820–22 (4th Cir.1984). In *Perry,* low income tenants brought an action for declaratory and injunctive relief and damages against the local housing authority. The tenants based their action on 42 U.S.C. § 1437[6] and on 42 U.S.C. § 1983. The tenants claimed that the landlord failed to keep the premises safe and clean as required by 42 U.S.C. § 1437. We ruled that although the tenants were intended beneficiaries of the Act, the benefit was not without limits. It did not include the right to sue for what Congress had conferred. That is to say, there was no implied private right of action under § 1437. "[T]he legislative history indicates no intention to create in the Housing Act a federal remedy in favor of tenants but does indicate quite clearly the intention to place control of and responsibility for these housing projects in the local Housing Authorities." *Perry, supra,* at 1213. We also rejected the tenants' argument that they had a cause of action pursuant to 42 U.S.C. § 1983 since the tenants had failed to indicate "any substantive provisions of the various housing acts which [gave] them a tangible right, privilege, or immunity." *Id.* at 1217. While we acknowledged that "the Act was designed to help low income families" we emphasized that "the actual assistance went not to the tenants, but to the states." *Id.* We therefore concluded that § 1437 did "not create any legally cognizable rights in tenants of programs funded under the housing statutes." *Id.* We noted though that our disposition of the tenants' § 1437 and § 1983 claims did not deprive the tenants of a remedy. "The lease between the plaintiffs and [the local housing authority] creates a landlord-tenant relationship. Plaintiff's rights are based on this lease and their remedy, if any, lies in

proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

5. In other words, the right asserted must itself be created in such other federal statute, for 42 U.S.C. § 1983 provides only a remedy and does not itself create rights. *See, e.g., Miener v. State of Missouri,* 673 F.2d 969, 976 n. 6 (8th Cir. 1982), *cert. denied,* 459 U.S. 909, 916, 103 S.Ct. 215, 230, 74 L.Ed.2d 171, 182 (1982) ("Section 1983 is remedial in nature, and does not in itself provide for any rights, substantive or otherwise."); *Birnbaum v. Trussell,* 371 F.2d 672, 676 (2d Cir.1966) ("Sec. 1983 ... should be interpreted with sufficient liberality to fulfill its purpose of providing a federal remedy in a federal court in protection of a federal right.").

6. § 1437. Declaration of policy

It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs. No person should be barred from serving on the board of directors or similar governing body of a local public housing agency because of his tenancy in a lower income housing project.

the [State] courts." *Id.* at 1217–1218, n. 15.

In *Phelps*, tenants challenged the legality of the local housing authority's policies regarding the admission of new tenants. The tenants claimed that such policies deprived them of their "right" to be selected under the tenant preference provisions outlined in the Act and that therefore they had a cause of action pursuant to § 1983. In evaluating the viability of the § 1983 action in light of *Middlesex* and *Pennhurst, supra*, we first considered whether Congress foreclosed private enforcement of the Housing Act in the enactment itself. On that score, we concluded:

> [A]lthough [the statutory sections in question] clearly manifest Congressional intent to benefit generally applicants who are involuntarily displaced or who occupy substandard housing, its chosen means of accomplishing that end is plainly that *HUD, rather than private litigants, is to be the enforcer of the statutory directive.* Apart from the obvious lack of any affirmative statutory language indicating a Congressional intention to allow private remedial suits, the statute is replete with indications of an intention to entrust HUD with the means and the responsibility for effective enforcement. The statutory scheme requires the Secretary to include in all Annual Contributions Contracts a requirement that public housing authorities adopt tenant selection criteria which include express preferences and a requirement that eligible applicants be notified of expected occupancy dates "insofar as ... can be reasonably determined." Under the statute the Secretary performs extensive audits to verify the authorities' compliance with the conditions of the ACC, and HUD is authorized, as contract promisee, to enforce compliance by the most drastic possible means: termination of the federal subsidies under the contract. In sum, the whole of the legislative scheme, we think, indicates Congress's intention that HUD should continue to enforce required conditions by means of asserting its rights under the ACC, thereby intending "to foreclose private enforcement" of the requirements of the Housing Act.

*Phelps, supra*, 742 F.2d at 821 (emphasis added). In sum, the situation is very analogous to the one in which a trustee, not the *cestui que trust*, must bring suit. *See, e.g., In Re Romano*, 426 F.Supp. 1123, 1128 (N.D.Ill.1977), *modified*, 618 F.2d 109 (7th Cir.1980) ("trustee is the only party who can sue a tenant for back rent even if the beneficiary has the right to the land's proceeds").[7]

As to the second *Middlesex* inquiry, *i.e.*, whether the rights allegedly conferred by the preference and notice provisions were the kind of "rights" enforceable under § 1983, we concluded that no such "rights" were involved. *Phelps, supra*, 742 F.2d at 821–22. We ruled that it was highly unlikely that Congress intended federal courts to "make the necessary balancing of inevitably conflicting interests as between different applicants and possibly opposing statutory purposes that would be required to adjudicate individual claims of right." *Id.* at 822. Likewise, in the instant case, we consider it highly unlikely that Congress intended federal courts to make the

---

**7.** It was not an act of caprice on the part of Congress to designate HUD the "enforcer" of the Housing Act. Rather, consolidating enforcement of the Act in a single governmental body was a practical legislative attempt to protect the limited resources available to the government. In other words, HUD can act as a screening body and focus its attention on those housing developments sorely needing attention without risking the depletion of funds available for redressing violations of the Housing Act.

It should be noted that, in the instant case, the tenants stated at oral argument that they asked HUD to confront RRHA with its alleged violations of the Brooke Amendment. According to the tenants, HUD declined to intervene. HUD's decision presumably reflected an intricate economic "sifting and weighing" process in which it assessed the utility of proceeding further on the tenants' behalf. Since the tenants chose not to join HUD as a defendant, we need not look behind HUD's decision in order to determine whether it breached any duty—perhaps that of a "trustee" owed to low-cost housing tenants under the Act. *Cf. Howard v. Pierce*, 738 F.2d 722, 730 (6th Cir.1984).

necessary computations regarding utility allowances that would be required to adjudicate individual claims of right.

■ To conclude, the plaintiffs under 42 U.S.C. § 1437a have certain rights but the remedy to enforce them is not conferred on them. Under 42 U.S.C. § 1983, conversely, the statute itself creates no right, but for rights elsewhere created of a certain character the statute provides a remedy. It will not suffice, however, simply to put the § 1437 right and the § 1983 remedy together to enable the case the plaintiffs assert to proceed. The § 1437 right is simply incompatible with the § 1983 remedy, for a characteristic of the § 1437 right is precisely that the plaintiffs are not to have the authority themselves to sue. HUD alone may, as quasi trustee, take legal action, for the right is explicitly tailored not to allow the beneficiaries, the low cost housing tenants, to do so.[8]

■ Thus, in light of *Perry* and *Phelps, supra,* the action of the district judge, 605 F.Supp. 532 (D.C.Va.1984), in granting summary judgment in favor of the RRHA on the § 1983 action and in dismissing the claim based on the lease without prejudice to pursuit by the plaintiffs of any state court cause of action which they may be entitled to assert is affirmed.[9]

AFFIRMED.

---

8. The tenants rely on *McGhee v. Housing Authority of City of Lanett,* 543 F.Supp. 607 (M.D. Ala.1982) to support the proposition that a violation of the Brooke Amendment gives rise to a § 1983 cause of action. Such reliance is misplaced. In *McGhee,* a public housing tenant brought an action against public housing authorities for setting rent in excess of ¼ of her income in violation of the Brooke Amendment. The tenant asserted a cause of action under both § 1437a and § 1983. The district court held that no private right of action existed under the Brooke Amendment but that the tenant had a cause of action under § 1983. The court's analysis pertaining to the existence of a § 1983 claim was, however, by no means exhaustive. The district court, in concluding that a § 1983 action existed, merely cited *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), for the proposition that "§ 1983 encompasses claims based on purely statutory violations of federal law" without engaging in the more detailed inquiry prescribed in *Middlesex, supra.* Thus, based on the district court's reasoning, any time a plaintiff could assert a violation of federal law, (s)he could establish a § 1983 cause of action regardless of whether Congress foreclosed private enforcement of the particular statute or whether the statute at issue failed to create the type of "rights" enforceable under § 1983. *Maine v. Thiboutot,* however, concerned a *federally* established right to social security benefits which clearly was enforceable by private action in a state court. That, of course, is very different a) from Brooke Amendment benefits which, for reasons already advanced, are not enforceable by private action and b) from rights to bring state court actions under *state* landlord and tenant law.

As for *Beckham v. New York City Housing Authority,* 755 F.2d 1074 (2d Cir.1985), it must yield to the authority of *Perry* and *Phelps, supra,* from our own circuit.

9. We have also considered whether the statute relied on, namely, the Brooke Amendment of the United States Housing Act of 1937, 42 U.S.C. § 1437a, created rights of the type which plaintiffs here assert. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The tenants in the instant case never asserted a cause of action under the Brooke Amendment but rather limited their claim to § 1983. However, given the close nexus between implying a cause of action under a federal statute and asserting a § 1983 claim, we address the former in order to render our disposition of the case more "complete." *See Phelps v. Housing Authority of Woodruff,* 742 F.2d 816, 822, n. 10 (4th Cir.1984):

Appellants argue that the district court erred in holding that 42 U.S.C. § 1437d(c)(4)(A) and 42 U.S.C. § 1437d(c)(3)(ii) do not give rise to implied private causes of action. It is somewhat unclear whether they make this argument only in response to the district court's holding that in order for a violation of a federal statute to be actionable under § 1983, that statute must be of such a quality that in essence it gives rise to such an implied action, or whether they suggest that they had asserted such a separate private right of action that was erroneously denied.

As both the complaint and the court's opinion are cast in § 1983 terms, we consider the former interpretation more plausible. *The inquiry under either interpretation of the appellant's position is similar, though not perfectly congruent. Nevertheless, lest our disposition of the case seem incomplete,* we reject plaintiffs' implied private cause of action argument on the reasoning of *Perry v. Housing Authority,* 664 F.2d 1210 (4th Cir.1981).

(Emphasis added).

Review of the statutory language of the Brooke Amendment reveals no provisions creating a right on the part of individual tenants to

GORDON, Senior District Judge, concurring.

I concur in the analysis and the result of the panel's opinion. I write this brief concurrence to emphasize and, I hope, to clarify a point upon which the precedent has become a bit unclear, and which I found troubling. In considering the briefs, oral arguments, and the district court's decision in this case, it became apparent that the proper § 1983 analysis has become mistakenly entangled with the analysis for an implied private right of action. While the two analyses are closely related, they are separate and distinct. My purpose is to disentangle them.

As discussed in the panel's opinion, *Perry v. Housing Authority of Charleston*, 664 F.2d 1210 (4th Cir.1981), and *Phelps v. Housing Authority of Woodruff*, 742 F.2d 816 (4th Cir.1984), are the controlling precedent on the issue presented in this case, that is, whether a § 1983 cause of action exists to enforce the Brooke Amendment to the Housing Act of 1937. In each case, this court applied the standards set forth in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *Middlesex City Sewage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), for determining whether § 1983 enforcement of a statutory violation was proper. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The dual tests for § 1983 enforcement are 1) whether Congress, in enacting the statute and its enforcement scheme, had foreclosed a private remedy, and 2) whether the statute created enforceable "rights, privileges, or immunities" under § 1983. *Middlesex*, 453 U.S. at 19, 101 S.Ct. at 2626; *Pennhurst*, 451 U.S. at 28, n. 21, 101 S.Ct. at 1545, n. 21.

In *Perry* the aggrieved tenants sought relief under § 1983 and also alleged a private right of action under the Housing Act of 1937 (Act). The *Perry* court began its analysis by determining whether the tenants had a private right of action under the Act. To do this, the court applied the test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And [fourth], is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal laws?

*Perry*, 664 F.2d at 1211–12 (*quoting Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088).

It is clear that many of the elements that a court must consider in applying *Cort v. Ash* would also be relevant in determining whether a § 1983 action was proper under *Middlesex* and *Pennhurst*. Both tests hinge on whether "rights" were created in the prospective plaintiffs and whether Congress intended private enforcement by the respective procedure. Distinctions exist, though, however fine. For instance, *Cort v. Ash* instructs us to consider whether there is "any indication of legislative intent ... either to create [a private] remedy or to deny one," and to ask whether it would be consistent with the underlying purpose to imply one, 422 U.S. at 78, 95 S.Ct. at 2087; *Middlesex* commands that we ask "whether Congress had foreclosed private enforce-

---

assert infractions of the sort claimed here. The existence of such a right is essentially negatived by the provisions of the annual contributions contract, a standardized form employed by HUD in this case. By Section 508 the annual contributions contract provides that HUD has "the right ... to maintain any and all actions at

law or in equity against the local authority to enforce the correction of any ... default or to enjoin any ... default or breach." The implication to be drawn from that language runs counter to the claim that the plaintiffs have enforceable rights under the Brooke Amendment.

ment of that statute in the enactment itself." 453 U.S. at 19, 101 S.Ct. at 2626. Under the former, we must find an intention to imply a remedy before granting one; under the latter, if there is a "right," we assume that private enforcement is permissible absent some clear indication to the contrary. While in many instances this would be a distinction without a difference, it did not prevent the Supreme Court in *Middlesex* from addressing the questions separately.[1]

The *Perry* court first addressed whether the tenants could pursue a private right of action under the Act, and applied *Cort v. Ash.* Because the sections of the Act relied on by the plaintiffs in *Perry* were merely broad policy provisions, and because HUD was the intended enforcer of the Act, the court concluded that there were no "rights" created and no intent to imply a private remedy. The court therefore refused to imply a private right of action. Turning to whether the tenants could sue under § 1983, the *Perry* court focused on the second prong of the *Middlesex* test: whether the statute created privately enforceable "rights." Based partly on the same factors the court had considered in its *Cort v. Ash* discussion, the *Perry* court concluded that the Act "does not create any legally cognizable rights in tenants of programs funded under the housing statutes." 664 F.2d at 1217. Because it had answered this inquiry in the negative, the court never reached the issue of legislative intent to foreclose § 1983 enforcement.

Subsequently, in *Home Health Services v. Currie,* 706 F.2d 497 (4th Cir.1983) (per curiam), this court was faced with a claim alleging a private right of action under the Medicare Act. The court applied *Cort v. Ash* and concluded that no such private

right of enforcement existed. The court noted that, although a § 1983 claim had not been raised at trial, one had been argued on appeal. Assuming, *arguendo,* that the issue was properly before it, the court stated that "the conclusion that Home Health has no right of action [under this statute] compels the conclusion that Home Health likewise has no cause of action under § 1983...." *Id.* at 498 (*citing Perry,* 664 F.2d at 1217–18). Read in context, this language means "as in *Perry,* we find that based upon the same elements which lead us to conclude that no private right of action exists under *Cort v. Ash,* we conclude that there is no § 1983 right under *Middlesex.*" Taken out of context, however, it could imply, incorrectly, that application of the *Cort v. Ash* test suffices to answer the § 1983 inquiry as well, *i.e.,* that the conclusion that there is no private right of action leads inexorably to dismissing a § 1983 action.

The potential for misinterpreting this language may have been foreshadowed in *Phelps v. Housing Authority,* 742 F.2d 816 (4th Cir.1984). In *Phelps,* as in *Perry,* the plaintiffs attempted to sue under the broad policy provisions of the Housing Act, but, unlike the *Perry* plaintiffs, the tenants urged their claim solely under § 1983. Applying *Pennhurst, Middlesex,* and *Perry,* the court in *Phelps* concluded that a § 1983 action was not proper. In a footnote, the court noted:

Appellants argue that the district court erred in holding tha 42 U.S.C. § 1437d(c)(4)(A) and 42 U.S.C. § 1437d(c)(3)(ii) do not give rise to implied private causes of action. It is somewhat unclear whether they make this argument only in response to the *district court's holding that in order*

---

1. The Court was faced with whether a private right of action existed to enforce certain federal pollution control and environmental protection acts. The Court stated that "both the structure of the Acts and their legislative history lead us to conclude that Congress intended that private remedies in addition to those expressly provided should not be implied." 453 U.S. at 18, 101 S.Ct. at 2625 (applying *Cort v. Ash* ). The Court then applied the test for § 1983 and, based on these same factors, concluded that "the existence of ... express remedies [in the statutes] demonstrate not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." *Id.* at 21, 101 S.Ct. at 2627.

*for a violation of a federal statute to be actionable under § 1983, that statute must be of such a quality that in essence it gives rise to such an implied action,* or whether they suggest that they had asserted such a private right of action that was erroneously denied.

As both the complaint and the court's opinion are cast in § 1983 terms, we consider the former interpretation more plausible. *The inquiry under either interpretation of the appellant's position is similar, if not perfectly congruent.* Nevertheless, lest our disposition of the case seem incomplete, we reject plaintiffs' implied private cause of action argument on the reasoning of [*Perry* ].

742 F.2d at 822, n. 10 (emphasis added).

The subject case was brought exclusively under § 1983. In its Memorandum Opinion, the district court quoted from *Home Health* the dictum that "the conclusion that Home Health has no right of action ... under 42 U.S.C. § 1359a compels the conclusion that Home Health likewise has no cause of action under § 1983...." Thus, the district court concluded that "a determination of whether the plaintiffs have been deprived of 'rights, privileges, or immunities' within the meaning of § 1983 should begin with a determination of whether an implied right of action exists under the Brooke Amendment." *Wright v. City of Roanoke Redevelopment and Housing Authority,* 605 F.Supp. 532, 534 (W.D.W.Va.1984). The court proceeded to apply *Cort v. Ash,* and found no private right of action. The district court then discussed *Middlesex,* but in the final analysis, the court decided that plaintiffs could not bring their action under § 1983 based on its conclusion that no private right of action existed, plus the "compels" language of *Home Health.* 605 F.Supp. at 538. This seems to represent a misinterpretation of *Home Health* and a confusion of the appropriate analysis for these two distinct remedial devices.

It is clear from *Perry, Phelps,* and from this court's opinion today that the correct inquiry to determine whether a § 1983 action is proper is set forth in *Pennhurst* and *Middlesex.* While any confusion is understandable, it was unnecessary and inappropriate to consider *Cort v. Ash* and its progeny in the subject case. Although the § 1983 analysis closely parallels the *Cort v. Ash* inquiry for implied private rights of action, the two are distinct, however subtly. It is only to emphasize this distinction that I felt compelled to add my voice to the opinion of this court, for I concur fully in its opinion.