Mary BROWN, et al.,
Plaintiffs-Appellants,

v.

HOUSING AUTHORITY OF the CITY OF McRAE, GEORGIA, et al.,
Defendants-Appellees.

No. 85–8186.

United States Court of Appeals,
Eleventh Circuit.

March 25, 1986.

Howard Sokol, Macon, Ga., M. Ayers Gardner, Atlanta, Ga., for plaintiffs-appellants.

R. William Buzell, II, Macon, Ga., Lawrence B. Lee, Savannah, Ga., Edwin B. Brading, Dept. of Housing & Urban Dev., Atlanta, Ga., for defendants-appellees.

Before HILL and FAY, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Plaintiffs, tenants of public housing projects owned and operated by the defendant Housing Authority of the City of McRae, Georgia, appeal from an order of dismissal by the district court. Plaintiffs sought injunctive, declaratory and monetary relief against defendants, the Housing Authority; its Executive Director and Board of Commissioners (hereinafter "the local defendants"); and the Secretary of Housing and Urban Development (hereinafter "HUD"), for alleged inaccuracies in

the computation of plaintiffs' utility allowances by the Housing Authority. The district court dismissed plaintiffs' complaint as to all the defendants for failure to state a claim upon which relief can be granted. We affirm.

I.

In this action, filed July 23, 1984, plaintiffs and the class they had hoped to represent [1] alleged that the defendants violated the Brooke Amendment to the United States Housing Act of 1937, 42 U.S.C. § 1437a (1982 & Supp. I 1983), which limits the rent which can be charged to public housing tenants to a fixed portion of their income.[2] HUD's regulations implementing the Brooke Amendment, provide that rent shall include allowances for utility charges. *See* 24 C.F.R. §§ 965.470–.480 (1985). In the instant case, plaintiffs specifically allege that the local defendants established utility allowances which were not in accordance with applicable HUD regulations, i.e., the utility allowances were set unreasonably low and were not periodically revised, and that defendant HUD failed to properly monitor and obtain compliance of the local defendants with the Brooke Amendment and its implementing regulations. In addition to their claims for relief under the United States Housing Act, (hereinafter "USHA"), the Brooke Amendment thereto, and HUD's implementing regulations, plaintiffs asserted claims for relief under 42 U.S.C. § 1983 (1982); and the Administrative Procedure Act, 5 U.S.C. §§ 701–706

(1982 & Supp. II 1984)) (hereinafter "APA").

On October 10, 1984, the local defendants filed a motion to dismiss and on October 19, 1984, defendant HUD filed a motion to dismiss or, in the alternative, for summary judgment. The basis for the defendants' motions was their contention that the plaintiffs' complaint failed to state a claim upon which relief could be granted. Essentially, the local defendants maintained that there was no implied private right of action to enforce the Brooke Amendment nor was there a cause of action to enforce the Brooke Amendment under section 1983. Defendant HUD also maintained that there was no implied private right of action and further argued that the APA did not provide for judicial review of HUD's enforcement activity because that was committed to agency discretion under 5 U.S.C. § 701(a)(2) (1982). On December 13, 1984 the district court granted the defendants' motions and dismissed with prejudice the case as to all defendants. This timely appeal followed.

II.

We are mindful at the outset of the scope of our review. As this matter is before us on a dismissal for failure to state a claim upon which relief can be granted, we must determine whether the plaintiffs could prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (foot-

---

**1.** The district court entered its order of dismissal before ruling on plaintiffs' motion for class certification.

**2.** 42 U.S.C. § 1437a(a) (1982 & Supp. I 1983) reads as follows:

(a) Families included; amount
Dwelling units assisted under this chapter shall be rented only to families who are lower income families at the time of their initial occupancy of such units. Reviews of family income shall be made at least annually. A family shall pay as rent for a dwelling unit assisted under this chapter (other than a family assisted under section 1437f(*o*) of this title)

the highest of the following amounts, rounded to the nearest dollar:
(1) 30 per centum of the family's monthly adjusted income;
(2) 10 per centum of the family's monthly income; or
(3) if the family is receiving payments for welfare assistance from a public agency and a part of such payments, adjusted in accordance with the family's actual housing costs, is specifically designated by such agency to meet the family's housing costs, the portion of such payments which is so designated.

note omitted). For the purposes of our review, we treat all of the allegations in plaintiffs' complaint as true. *See Stone Mountain Game Ranch, Inc. v. Hunt,* 746 F.2d 761, 763 n. 4 (11th Cir.1984). (citation omitted). We consider initially whether the district court erred as a matter of law in ruling that plaintiffs (1) failed to state a claim for relief against the local defendants under section 1983 and (2) failed to state a claim for relief against the local defendants and HUD in an implied private right of action under the Brooke Amendment. We then turn to consider whether the district court erred as a matter of law in ruling that plaintiffs had not stated a claim for relief against HUD for judicial review of agency action under the APA.

### III.

Whether plaintiffs have a section 1983 cause of action and an implied private right of action to enforce the rent provisions of the Brooke Amendment represent questions of first impression in this circuit. The Fourth Circuit has recently ruled on these precise questions in a similar action alleging violations of the Brooke Amendment and HUD's regulations, relating to utility allowances, promulgated pursuant thereto. *See Wright v. City of Roanoke Redevelopment & Housing Authority,* 771 F.2d 833 (4th Cir.1985), *cert. granted,* — U.S. ——, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).[3] We concur with that court's well reasoned analysis and its conclusion that alleged violations of the rent provisions of the Brooke Amendment do not give rise to a section 1983 cause of action nor does there

exist an implied private right of action to enforce the Brooke Amendment.

### 1. The Section 1983 Claim

■ The section 1983 remedy, which applies expressly to deprivations of "rights ... secured by the Constitution and laws" under color of State "statute, ordinance, regulation, custom, or usage," 42 U.S.C. § 1983, may also be applied to redress violations of federal statutory law. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). In determining whether a violation of a particular federal statute may lead to section 1983 liability, the court must find that (1) the statute which was allegedly violated was the kind that created enforceable "rights," within the meaning of section 1983 and (2) that Congress in enacting the statute and its scheme of enforcement, did not foreclose private enforcement for violations thereunder. *Wright,* 771 F.2d at 835 (footnote omitted) (citing to *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981) and *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981)). In *Wright,* the Fourth Circuit properly applied these two tests in determining that the Brooke Amendment does not give rise to a section 1983 cause of action.

In analyzing the first test, whether enforceable rights within the meaning of section 1983 were created, the Fourth Circuit in *Wright* relied on its earlier holdings in

---

**3.** We are aware that both the District of Columbia and the Second Circuits have recently ruled, contrary to the holding of the Fourth Circuit in *Wright,* that alleged violations of the United States Housing Act, 42 U.S.C. §§ 1437–1440 (1982 & Supp. I 1983) do give rise to section 1983 causes of action. *See Samuels v. District of Columbia,* 770 F.2d 184 (D.C.Cir.1985); *Beckham v. New York City Housing Authority,* 755 F.2d 1074 (2nd Cir.1985). We find *Samuels* distinguishable as, unlike *Wright* and *Beckham,* it does not involve the rent provisions of the

Brooke Amendment but rather the administrative grievance provisions of the United States Housing Act. As for *Beckham,* we simply find the Fourth Circuit's analysis in *Wright* on the availability of section 1983 relief for alleged violations of the Brooke Amendment more persuasive and accordingly we follow its decision. In so doing, we note that this conflict among the circuits on the section 1983 issue is one which the Supreme Court, having accepted certiorari in *Wright,* must ultimately resolve.

*Perry v. Housing Authority,* 664 F.2d 1210 (4th Cir.1981) and *Phelps v. Housing Authority,* 742 F.2d 816 (4th Cir.1984) in determining that the Brooke Amendment creates no enforceable rights, within the meaning of section 1983, in those tenants who occupy public housing projects. In *Perry,* plaintiffs sought to use section 1983 to correct allegedly unsafe and unsanitary housing conditions, by asserting a substantive right in the broad policy clauses of USHA, 42 U.S.C. §§ 1437, 1441, 1441a. The court held that although the tenants were the intended beneficiaries of USHA, the generalized policy statements of the Act did not alone create any legally cognizable rights in the tenants. 664 F.2d at 1217 (footnote omitted). Similarly, in *Phelps,* the court held that the preference and notice provisions established under USHA, 42 U.S.C. § 1437d(c)(4)(A) and § 1437d(c)(3)(ii) respectively, although more specific provisions than those involved in *Perry,* also did not create the kind of rights actionable under section 1983. 742 F.2d at 822 (footnote omitted). The court found it "highly unlikely that Congress intended federal courts to 'make the necessary balancing of inevitably conflicting interests as between different applicants and possibly opposing statutory purposes that would be required to adjudicate individual claims of right.'" *Wright,* 771 F.2d at 836 (quoting *Phelps,* 742 F.2d at 822). In *Wright,* the court extended the reasoning of *Perry* and *Phelps* and found that section 1437a, the rent provisions of the Brooke Amendment at issue in the instant case, were likewise not the kind of rights enforceable under section 1983. Although finding in the Brooke Amendment an intent to benefit generally public housing tenants, the *Wright* court stated "we consider it highly unlikely that Congress intended federal

courts to make the necessary computations regarding utility allowances that would be required to adjudicate individual claims of right." 771 F.2d at 836–37. We agree.

As regards the second test, the foreclosure of private enforcement, the court in *Wright* concluded, as it did in *Phelps,* that Congress had designated HUD, rather than the tenants themselves, as the enforcer of USHA thereby intending to foreclose private enforcement. *Id.* at 836 & n. 7 (citations omitted). " 'Apart from the obvious lack of any affirmative statutory language indicating a Congressional intention to allow private remedial suits, [USHA] is replete with indications of an intention to entrust HUD with the means and the responsibility for effective enforcement.'" *Id.* at 836 (quoting *Phelps,* 742 F.2d at 821). Part of the statutory enforcement scheme includes the Annual Contributions Contract executed between HUD and each local housing authority. *See* 24 C.F.R. § 941.-103 (1985) (defining Annual Contributions Contract). Pursuant to these contracts, HUD disburses federal funds to the local authorities provided that the local authorities comply with USHA and HUD regulations. Thus, HUD can enforce these requirements by way of the Annual Contributions Contract, including enforcing "compliance by the most drastic possible means: termination of the federal subsidies under the contract." *Phelps,* 742 F.2d at 821. Moreover, we note that another part of the statutory enforcement scheme is the administrative grievance procedures provided under HUD regulations promulgated pursuant to USHA. *See* 24 C.F.R. §§ 966.-51–.59 (1985).[4] Tenants with utility allowance grievances may air such grievances by way of these administratively created procedures.[5] In sum, it is our view that the existing statutory enforcement scheme

---

4. The history of the administrative grievance procedures mandated by USHA and HUD's regulations are discussed in detail in *Samuels v. District of Columbia,* 770 F.2d 184 (D.C.Cir. 1985). As noted *supra* 1536, n. 3, in *Samuels* the District of Columbia circuit held that an alleged failure by the local housing authority to provide

tenants with the administrative grievance procedures could be redressed in a section 1983 cause of action.

5. Contrary to plaintiffs' argument the administratively-created tenant grievance procedure does provide relief. While it is true that 24

shows a Congressional intent to preclude a private remedy.

## 2. Implied Private Right of Action.

■ The standard for determining whether to imply a private right of action was first set forth by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The following four factors were considered relevant:

First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088. (citations omitted) (emphasis deleted). Subsequent cases have recognized that these four factors are not entitled to equal weight; these cases have held that "[t]he key to the inquiry is the intent of the Legislature". *Middlesex Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981) (citations omitted); *see Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) (citations omitted); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). In the most recent Supreme Court cases evaluating an implied right of action under a federal statute, the Court continued to stress that the primary focus is upon legislative intent although it emphasized an examination of the remaining *Cort* factors as a means of ascertaining such intent. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535–36, 104 S.Ct. 831, 838–39, 78 L.Ed.2d 645 (1984) (citations omitted). *See Massachusetts Mutual Life Insurance Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (citations omitted). In other words, the three remaining *Cort* factors are used in an effort to reach the ultimate determination of legislative intent.

We note with respect to the first factor that many courts have recognized that public housing tenants are among the intended beneficiaries of the Brooke Amendment. *See Howard v. Pierce*, 738 F.2d 722, 725 (6th Cir.1984) and cases cited therein. However, the fact that public housing tenants may have been the desired beneficiaries "does not in and of itself create enforceable rights which, after all, is the critical issue posed by the second *Cort* standard." *Perry*, 664 F.2d at 1213. As the Supreme Court noted in *Universities Research Association v. Coutu*, 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981) (citation and footnote omitted), "the fact that an enactment is designed to benefit a particular class does not end the inquiry; instead, it must also be asked whether the language of the statute indicates that Congress intended that it be enforced through private litigation."

We thus proceed to the crucial second *Cort* factor, whether there is any indication of a legislative intent to create a private right of action under the Brooke Amendment. Both the language and the legislative history of the Brooke Amendment are silent as to Congressional intent either to create or deny a private right of action. As the court in *Howard* observed:

C.F.R. section 966.51(b) states that the grievance procedure "shall not be applicable to disputes between tenants not involving the [Public Housing Authority] or to class grievances," plaintiffs herein are not without recourse. The mere fact that plaintiffs cannot air their grievances in the form which they have chosen in the case at bar, i.e., as a class, does not leave them without relief. They may bring their individual claims under the administrative grievance procedure, thereby receiving the opportunity to be heard.

Generally when the statutory language is silent regarding a private right of action, the legislative history is also silent. This case presents no exception to the rule; nowhere in the legislative history have we uncovered an expression of intent either to provide or deny a private means of enforcing the Brooke Amendment.

738 F.2d at 727 (citations omitted). Moreover, having found silence on the question of legislative intent in the instant case we note that "Congress need not fear that unless it specifically denies a cause of action, the courts will automatically imply one; when Congress is silent there is no presumption in favor of a legislatively created cause of action." *Perry*, 664 F.2d at 1213.

We consider the third and fourth *Cort* factors together, as did the Court in *Perry*, since it would "plainly be inconsistent with any legislative scheme in the federal legislation to imply a private cause of action where the legal right invoked is one traditionally left to state law." *Id.* at 1216. The instant case is essentially a rent dispute falling within the area of landlord-tenant relations which is customarily the domain of state law. Indeed, "[i]t would be hard to find an area of the law in which the states have a greater interest or have had greater involvement than in the legal area of landlord-tenant." *Id.* (citations omitted). For the foregoing reasons we conclude that plaintiffs have failed to meet the *Cort* criteria and, therefore, have not stated an implied private right of action under the Brooke Amendment.

## IV.

With respect to plaintiffs' third claim for relief, the district court concluded that HUD's alleged failure to insure enforcement of its utility allowance regulations, was unreviewable under the APA because agency action concerning utility allowances is committed to agency discretion. 5 U.S.C. § 701(a)(2) (1982). We agree.

The Supreme Court has recently considered the extent to which an administrative agency's failure to enforce its statutory and regulatory duties is subject to judicial review under the section 701(a)(2) exception. *Heckler v. Chaney*, —— U.S. ——, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). In *Heckler* the court denied review of the Food and Drug Administration's decision not to enforce the law proscribing unapproved use and mishandling of a drug, on the basis of a failure to state a claim under Fed.R.Civ.P. 12(b)(6). The Court discussed the historical judicial application of section 701(a)(2) and observed:

This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement.

The reasons for this general unsuitability are many. First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Similar concerns animate the principles of administrative law that courts generally will defer to an agency's construction of the

statute it is charged with implementing, and to the procedures it adopts for implementing that statute.

*Id.* 105 S.Ct. at 1656. (citations omitted).

Under the analysis in *Heckler,* the plaintiffs' request for review of HUD's enforcement activities in this case are not reviewable nor suitable for review for many of the same reasons. In particular, we find that HUD's enforcement action involving utility allowances "involves a complicated balancing of a number of factors which are peculiarly within [HUD's] expertise," *id.* at 1656, and, by contrast, that the federal courts are ill-equipped to review the managerial, economic and technical concerns inherent in establishing utility allowances. In similar cases relating to requested judicial review of rent increases and adjustments in HUD-subsidized housing projects, the courts have found review inappropriate. *See Hahn v. Gottlieb,* 430 F.2d 1243, 1249 (1st Cir.1970); *Dew v. McLendon Gardens Associates,* 394 F.Supp. 1223, 1233 (N.D.Ga.1975). We therefore hold, pursuant to the decision in *Heckler,* that HUD's enforcement activity is not reviewable under the APA.

### V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

TUTTLE, Senior Circuit Judge, dissenting:

With deference I dissent. As noted in the Court's opinion, the Supreme Court has granted certiorari in the case of *Wright v. Roanoke Redevelopment & Housing Authority,* 771 F.2d 833 (4th Cir.1985). It is apparent that the Court has taken this case to resolve a dispute between the Court of Appeals for the Fourth Circuit in *Wright* and the Courts of Appeals for the Second Circuit in *Beckham v. New York City Housing Authority,* 755 F.2d 1074 (2d Cir. 1985), and the District of Columbia Circuit in *Samuels v. District of Columbia, et al.,*

770 F.2d 184 (D.C.Cir.1985). In view of the pendency of the *Wright* case in the Court, I would await its outcome, rather than attempt to resolve the dispute between the Fourth Circuit on the one hand and the Second and D.C. Circuits on the other.

However, since the majority has decided to proceed to a decision, I must express my view that the decision of the Second Circuit in *Beckham* and the D.C. Circuit in *Samuels* are correct and should guide our action.

### The 1983 Claim

The *Wright* case, which has been adopted by the majority, clearly errs in my opinion in its determination that a § 1983 claim does not exist because "the tenants had failed to indicate 'any substantive provisions of the various housing acts which [gave] them a tangible right, privilege, or immunity,'" citing *Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210, 1217–18 (4th Cir.1981). The *Wright* Court opined: "While we acknowledged [in *Perry* ] that 'the Act was designed to help low income families' we emphasized that 'the actual assistance went not to the tenants, but to the states.' *Id.* We therefore concluded that § 1437 did 'not create any legally cognizable rights in tenants or programs funded under the housing statutes." *Id.,* 771 F.2d 833, 835.

The majority's acceptance of this reasoning, controls, wrongly, I think, its decision with respect to the existence of a § 1983 claim. Unless the congressional act creates a "right" in the tenants involved, they, of course, cannot proceed under § 1983, which provides a remedy for a person who is deprived under color of any state law or, now since *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), any federal law, of any "rights, privileges, or immunities secured by the Constitution and laws."

In order for a statutory violation to permit a victim to proceed by a § 1983 action, two factors must be satisfied: (1) The un-

derlying statute must create enforceable rights; and (2) Congress must not· have foreclosed private enforcement of that statute in the statute itself. *Middlesex County Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981).

Because of the explicit provisions of the Housing Act and the regulations issued thereunder establishing the rent and the manner by which it is to be computed, I am fully of the opinion that not only are the tenants of such housing members of a class intended to be benefitted by the Act, but they have been granted an "enforceable right," which may be vindicated under § 1983. I agree with the opinion of the Court of Appeals for the Second Circuit in *Beckham, supra:*

> According to the teaching of *Pennhurst,* the first question to be asked is: 'Did Congress intend [in § 1437a] to create enforceable rights and obligations in favor of private parties?' 451 U.S. at 15, 101 S.Ct. at 1539. Trial courts in this circuit have recognized that section 1402(1), the predecessor statute of section 1437a, established an enforceable right of public housing tenants to pay as rent no more than the percentage of their incomes prescribed by federal law. *See, e.g., Owens v. Housing Authority of the City of Stamford,* 394 F.Supp. 1267, 1273 (D.Conn.1975); *Barber v. White,* 351 F.Supp. 1091, 1097 (D.Conn. 1972). Both *Owens* and *Barber* held that section 1402(1) established enforceable rights against local housing authorities and housing authority officials who set rents at higher than twenty-five percent of the tenant's income.

> The rent limits set forth in the Brooke Amendment thus stand in sharp contrast to the funding statute interpreted in *Pennhurst.* There, the Court described the pertinent section ás doing no more 'than express[ing] a Congressional preference for certain kinds of treatment' and as a declaration of policy serving

only as a 'nudge in the preferred direction.' 451 U.S. at 19, 101 S.Ct. at 1541 (quoting *Rosado v. Wyman,* 397 U.S. 397, 413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970)).

755 F.2d at 1077.

We next look at the second exception to enforcement of federal statutory rights through § 1983. That is, "when the remedial devices in a particular act are sufficiently comprehensive [so] they may suffice to demonstrate congressional intent to preclude the remedy of suits under section 1983." *National Sea Clammers, supra.*

Again, I agree with the opinion in *Beckham:*

> In National Sea Clammers, the Court found that the 'elaborate enforcement provisions' contained in the Federal Water Pollution Control Amendments (FWPCA), 33 U.S.C. § 1251 *et seq.,* fell under this exception and, therefore, concluded 'that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under section 1983.' *Id.* [451 U.S.] at 14, 21, 101 S.Ct. at 1538, 1542. The FWPCA provided that suits could be brought in the courts of appeals by 'any interested person' seeking judicial review of various actions by the Administrator of the Environmental Protection Agency. The FWPCA also contained express citizen-suit provisions authorizing private persons to seek injunctions to enforce these statutes. *Id.* at 13–14, 101 S.Ct. at 1537–38.

> The Brooke Amendment, by contrast, contains no comprehensive enforcement mechanism to enforce statutory rent limitations. *See McGhee v. Housing Authority of Lanett,* 543 F.Supp. 607, 609 (M.D.Ala.1982).

755 F.2d at 1077.

The only conceivable remedial device contained under the relevant housing laws for the tenants' relief in a case such as this, is the ability of the Department· of Housing &

Urban Development to cut off the funding of the local housing authority. In discussing this particular remedy against violations of the statute, the majority opinion states: "Part of the statutory enforcement scheme includes the Annual Contributions Contract executed between HUD and each local housing authority.... Pursuant to these contracts, HUD disburses federal funds to the local authorities provided that the local authorities comply with USHA and HUD regulations. Thus, HUD can enforce these requirements by way of the Annual Contributions Contract, including enforcing 'compliance by the most drastic possible means; termination of the federal subsidies under the contract,'" citing *Phelps*, 742 F.2d at 821. It is not surprising that the court accepted the language of *Phelps* as calling this remedy "the most drastic possible means." It is, in fact, so drastic, that it has been thoroughly criticized not only in *Samuels, supra*, but in what I consider to be a comparable situation, by the Supreme Court in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). There, the Court after stating that Congress wanted, first, to avoid the use of federal resources to support discriminatory practices and, second, to provide individual citizens with protection against these practices, said:

> The first purpose is generally served by the statutory procedure for the termination of federal financial support for institutions engaged in discriminatory practices. That remedy is, however, severe and often may not provide an appropriate means of accomplishing the second purpose if merely an isolated violation has occurred. In that situation, the violation might be remedied more efficiently by an order requiring an institution to accept an applicant who had been improperly excluded. Moreover, in that kind of situation it makes little sense to impose on an individual, whose only interest is in obtaining a benefit for herself, or on HEW, the burden of demonstrating that an institution's practices

are so pervasively discriminatory that a complete cutoff of federal funding is appropriate. The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is also fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute.

441 U.S. 705–06, 99 S.Ct. at 1962.

Also, as stated in *Samuels*, "terminating federal funds is a drastic remedy, rarely imposed, that only serves to injure the intended beneficiaries." 770 F.2d at 196. It certainly cannot be said here that making this one "drastic" remedy available, together with the right of an administrative grievance procedure which does not permit a class claim, would constitute the adoption of "enforcement mechanisms of the Act [that] *are sufficiently* comprehensive to indicate that Congress *specifically* foreclosed a remedy under section 1983." *Samuels*, 770 F.2d at 195. (Emphasis added.)

I agree, therefore, with the Second and D.C. Circuits in their conclusion that the complaint here adequately alleges a § 1983 action against both the local and federal defendants.

I therefore respectfully dissent.